### KELLER & LYON *vs.* PHILIPS.

Where one has been expressly forbidden by a husband to give credit to his wife, in order to render the husband liable for subsequent supplies, it is incumbent on the parties so forbidden to show affirmatively that the husband did not supply his wife with necessaries suitable to her condition in life. BOCKES, J. dissented.

Keller *v.* Philips.

The authority of a wife to make her husband liable for *necessaries* for her, proceeds not from her power to make contracts to bind him, but from a *license* from him, to be *presumed* from the fact of cohabitation.

But if the husband has solemnly declared his dissent to the giving of credit to his wife, there is no longer room for *presumption*, and any one who afterwards trusts her, with notice of such dissent, trusts her at his peril, and takes upon himself the risk and *onus* of proving the husband's failure to supply his wife with suitable necessaries.

THIS action was commenced in a justice's court. The plaintiff obtained a judgment there for $100 and costs. The case was appealed to the county court, where the judgment was affirmed, and from that court an appeal was taken to this.

The plaintiffs are merchants, doing business at Fort Plain, Montgomery county, and their complaint is on a bill of goods sold to the wife and children of the defendant. The defense set up in the answer is that before the sale and delivery of the goods in question, the defendant notified the plaintiffs and forbade them to sell to his wife and family, goods on credit. The cause was tried by a jury. There were various exceptions taken to the ruling of the justice on the trial, which, with all other facts necessary to be stated, will sufficiently appear in the opinion.

*J. E. Dewey*, for the plaintiff.

*A. Lewis*, for the defendant.

*By the Court*, POTTER, J. The county judge has furnished us no aid by his examination of the case, having written no opinion, merely saying, upon the case, " Affirmed." We are therefore to look at the case as if the review was direct from the justice's court. The complaints of error in the trial, besides that of the verdict being against law and evidence, consist principally in the rulings of the justice on the trial, and as to the onus of the proof. The correctness or otherwise of these rulings will more clearly be seen, if we first examine what

the law is upon the principal question on the merits of the case. There is very little if any of conflict upon the law, relating to this case, either in elemental or adjudicated authority. I think there is no doubt that while husband and wife live and cohabit together, which is this case, the wife has implied authority from the husband to supply herself with necessaries of food and clothing suitable to his station in life. If the husband fail in that duty, the law regards it as a proper necessity that she should have the power to bind him in this respect. This implication will entitle the party supplying the necessaries to recover their value from the husband, in the face of the most positive evidence, not only of a want of *express* authority, but of a refusal to give authority; or of a refusal on his part to provide her with such necessaries. (*Bright on Husband and Wife,* 6 to 9. *Bell on the Law of Property,* 21, 22.) But in order to maintain an action for necessaries, the *onus* lies upon the party supplying them to show that the wife was in a condition which rendered the supply necessary; and where a party has been expressly forbidden to give credit to a wife, in order to render the husband liable for subsequent supplies, it is incumbent on the party so forbidden to show affirmatively and clearly, that the husband did not supply her with necessaries suitable to her condition in life. (*Mott* v. *Comstock,* 8 *Wend.* 545, *and cases there cited. Kimball* v. *Keyes,* 11 *id.* 34.) Originally, the wife has no power to make her husband liable for her contracts of any kind; and the authority to make her husband liable for *necessaries* for her proceeds not from her power to make contracts to bind him, but from a *license* from him, to be *presumed* from the fact of cohabitation. In *Etherington* v. *Parrott,* (*Ld. Raym. Rep.* 1006,) Holt, Ch. Just. said, "it is the cohabitation that is the evidence of the husband's assent to contracts made by his wife for necessaries. But if the husband have solemnly declared his dissent, that she shall not be trusted, any person that has notice of this dissent, trusts her at his peril, after;" "for then, there is no

longer room for *presumption."* I am not aware that this authority has ever been questioned. This law was declared about the year 1701, and was cited with approbation by Sutherland, J. in *Mott* v. *Comstock,* (*supra.*) A still older authority, *Manley* v. *Scott,* decided in 1663, reported in 1 *Modern R.* 124, is substantially to the same effect. Hyde, J. who delivered the opinion of the court, gives the same basis for the rule that still continues to be the law, as I understand it. He says, if a feme covert make a contract or buy any thing in the market, or elsewhere, without the allowance or consent of her husband, although it come to the use of the husband, yet the contract is void, and shall not charge the husband; but if a man command or *license* his wife to buy things *necessary,* or agree that she shall buy, he shall be bound by the command or license, which proves, (says he,) that it is not the buying, or *contract* of the wife which binds or charges the husband; (for that is void in itself,) but the command or license, of the husband, which makes it the contract or bargain of the husband. Therefore it is that cohabitation creates the presumption of *license,* not of *authority,* to make a contract." The argument in the case last cited is so quaint, yet containing within it such a fund of good sense for the rule laid down, that, though it may be charged to be old fashioned doctrine, as applicable to this age of progress, I cannot omit a quotation from it. " Admit," says the judge, " that in truth the wife wants necessary apparel, woolen and linen, and therefore she goes into Paternoster Row, to a mercer, and takes up stuff and makes a contract for necessary clothes, thence goes up into Cheapside, and takes up linen there in like manner; and also goes into a third street, and fits herself with ribands and other necessaries, suitable to her occasions, and her husband's degree. This done, she goes away, disposeth of- the commodities to furnish herself with money to go abroad to Hyde Park, to score at Gleeke or the like. Next morning this good woman goes abroad into some other part of London, makes her *necessity,* and want of

apparel known ; and takes more wares upon trust, as she had done the day before ; and after this manner she goes to a third and fourth place and makes new contracts for fresh wares ; none of these tradesmen knowing or imagining she was formerly furnished by the other ; and each of them seeing and believing her to have great need of the commodities sold to her ; shall not the husband be chargeable and liable to pay every one of these if the *contract* of the wife doth bind him ? Certainly ! every one of these hath as just cause to sue the husband as the other ; and he is as liable to the action of the last, as to first, or second, if the wife's *contract* shall bind him, and where this will end, no man can divine or foresee." Such would be the consequence, if the *tradesman* is permitted to determine from *apparent* necessity ; and where his interest to sell his wares at a profit might quicken his judgment to believe in the necessities of every wife who was disposed to trade with him upon that pretense. Hence the propriety and good sense of the rule that a party who so furnishes to a feme covert goods takes the onus, and the risk, of showing affirmatively and clearly that the husband did not supply his wife with necessaries suitable to her condition ; and more especially, when he has been notified by the husband not to make such sales. Applying this rule to the case before us, it is seen from the evidence that prior to the date of any part of the bill sued upon, as sworn to by the defendant, and but shortly after, as sworn to by the plaintiffs, the plaintiffs had express notice from the defendant, and was forbidden by him to sell his wife goods. This fact is not controverted. The reply made by one of the plaintiffs, when this notice was given, precludes all question upon this point, and shows that the plaintiffs intended to take upon themselves all the peril and responsibility that the law imposes in that respect. The plaintiff, who was a witness, coolly, not to say insultingly, informs the defendant that he should not refuse his wife any credit she asked for. " He did not confine his answer to the furnishing of *necessaries.*" He did furnish his

Keller *v.* Philips.

wife, after that, with goods exceeding in price $100. This action is upon that bill. The defendant, on the trial, attempted to prove, and was prevented by the ruling of the justice from proving, that he furnished his wife money, from the boarding of Mr. Shults, and from the milk of two cows, to sell, and to apply as she thought proper. If there had been any evidence in the case tending to prove the husband did not supply her, this ruling would have been manifest error, and if it be not error now, it is for the reason that there was no evidence to the contrary to be rebutted; but the ruling doubtless misled the jury as to the law as it was; though to another question afterwards, the defendant did testify, and there is no evidence to contradict it, that he did furnish his wife with money and means to clothe herself and family. There is not one word of evidence in the case to show that the husband did not supply his wife with necessaries suitable to her condition. On this question there is no conflict of. evidence. The plaintiff made no attempt to prove this. He failed therefore in making out his case, and the verdict of the jury was against both law and evidence. The plaintiff on the trial doubtless supposed that proof of the defendant's *apparent* ability to support his wife, would raise a question for the, jury whether she was furnished by her husband with necessaries suitable to her rank and condition in life. This would have been proper evidence on the part of the plaintiff after establishing the fact, or even if the fact had subsequently been established, that the husband failed to supply his wife with such necessaries; and then it would have been a question of fact for the jury to determine, whether the supply was suitable and sufficient for her condition. On this question of his ability, the plaintiffs made the defendant their witness, and they proved by him the possession of real estate, in all, worth about $4250, and of personal less than $500, a total of less than $4750. It was shown that he owed debts to the amount of $3700, leaving him worth, clear, above liabilities, but about $1000, and with a family of ten persons to support.

And yet the plaintiffs, in defiance of notice to the contrary, gave the wife a credit exceeding $100, upon which they venture to sue the husband. The danger of departing from sound rules could not be more forcibly illustrated than in this case. The care of maintaining and supporting a family devolves by nature and by custom, upon the husband as the head; none so well as himself, knows his ability and means of support, the reasonable exercise of the judgment and discretion to be exercised in this respect belongs to him, and it is only when he unreasonably refuses to perform this duty that the law allows of interference by others. The peace and quiet of families, the harmony of the domestic relation of husband and wife, its good government, prosperity and order, depend in a good degree on the non-intervention of officious and disinterested intermeddlers in the affairs of their neighbors. The husband, as the head of this institution, has a right to select his own places of trade, and to supply, and to deal with such persons as he in his judgment may please or direct, and the courts should frown upon all attempts of others, whether from motives of interest or otherwise, against the peace and good order of this relation, against disturbing the *harmony* and the quiet of families, against interfering with the domestic relations by encouraging extravagance, thus destroying the influence and control of the properly constituted head of the family. Whoever undertakes the experiment, does it at his peril. I trust that the courts will not be found the instrument to aid him.

It is also claimed that the goods purchased in this case were worn by the wife and family, and the defendant having seen them worn, without expressing any disapprobation, is presumed to have assented to and ratified the credit, and that the jury having passed upon this question it cannot be reviewed. The proposition is entirely sound, as a legal proposition, but has no basis to sustain it; it has no application to the case before us. There was no such evidence for the jury to pass upon. The only evidence in the case was the

positive testimony of the defendant that the first he knew of his wife or family having traded any part of this bill was in October, 1861. Nearly all the bill had then accrued. It does not make evidence in conflict, or to the contrary, that he saw, (if he did see, of which there is no evidence,) his wife and children wearing articles without knowing where or how they had been purchased. He had a right to suppose they were purchased by money he furnished. If the jury really passed on this question, as was insisted, the judgment should be reversed for that reason. They had no right to pass upon it; there was no evidence before them to pass upon. I have been unable to find any feature in this case demanding its affirmance. I think the judgment of the county court and that of the justice should be reversed.

JAMES, J. concurred.

BOCKES, J. dissented.

Judgment reversed.

[WARREN GENERAL TERM, July 14, 1863. *Potter, Bockes* and *James,* Justices.]