————o————

WILLIAM BARR, JOSEPH FRANKLIN and C. H. BERKING, Appellants, *vs.* DAVID H. ARMSTRONG, Respondent.

1. *Practice, civil—Papers in duplicate—Notice to produce, etc.*—Notice to produce is never required where the instrument to be proved and that produced are duplicate originals, or where the instrument to be proved is itself a notice.

2. *Husband and wife—Necessaries—Notice to cease furnishing, etc.—Husband bound for afterward, when.*—In order to bind the husband for goods sold the wife, after the seller has had notice to discontinue the sales, the latter must show, not only that the goods are necessaries, but that the husband has failed to make an adequate supply of them.

3. *Practice, civil—Instructions.*—Instructions not based on evidence ought not to be given.

4. *Practice, civil—Instruction—May assume facts, when.*—*Semble,* that when testimony is clear and undisputed, an instruction may assume the truth of the matter sworn to.

*Appeal from St. Louis Circuit Court.*

*J. G. Chandler, with S. T. Glover, amicus curiæ,* for Appellants.

I. The facts to be proved by the wife, viz: the condition of her wardrobe, and her husband's refusal or neglect to supply her with things needful, were in their nature "secret facts," not susceptible of proof by any other person. She was, therefore, a competent witness, notwithstanding the general rule excluding her. (1 Greenl. Ev., § 344; *Ibid* note 3, citing, Radcliff vs. Wales, 1 Hill, Chy. 63; Dickerman vs. Graves, 6 Cush., 308; State vs. Newbury, 43, Mo., 429.)

A contrary doctrine puts a wife absolutely in the power of a cruel, brutal or miserly husband. Who but the wife herself could possibly testify intelligently as to the deficiencies

of her wardrobe, or what her husband had done or refused to do, with reference to supplying her wants?

II. The evidence as to the notice was clearly secondary and incompetent. (1 Greenl. Ev., 560; Lombard v. Ferguson, 15 Cal., 374.)

III. "Where the husband neglects to furnish his wife with necessaries, he is liable to the tradesman who furnishes them, notwithstanding he was expressly forbidden to trust her." (Schoul. Dom. Rel., 85.)

IV. The instructions given took from the jury the right to pass upon the question of necessaries, either as to class or amount. (Schoul. Dom Rel., 78; Hall vs. Weir, 1 Allen, 261; Parks vs. Kleeber, 37 Penn. St., 251.)

V. The instructions given, assumed the burden of proof to be upon the plaintiffs; although the admitted facts establish a *prima facie* case in their favor, for the amount of the entire bill. The simple circumstance that husband and wife are living together, is held sufficient where nothing to the contrary intervenes to raise a presumption that the wife is rightfully making such purchases as she may deem necessary. Accordingly, if an action be brought against the husband for the price of goods purchased under such circumstances, it must be taken *prima facie* that these goods were supplied by his authority, and he must show that he was not responsible. (Schoul. Dom. Rel., 81; Etherington vs. Parrot, 1 Salk., 118; Holt vs. Brien, 4 B. & A., 252; McCutchens vs. McGahay, 11 Johns., 251; Tebbetts vs. Hapgood, 34 N. H., 420; Allen vs. Aldrich, 29 N. H., 73; Clifford vs. Laton, 3 Carr & Payne, 15; Frost vs. Willis, 13 Ver., 202; Rumney vs. Keyes, 7 N. H., 571.)

The instructions given assume the truth of defendant's testimony, and preclude the jury from weighing its credibility. There was no evidence whatever of the notice having been given, except that found in defendant's testimony in his own behalf; and the jury were in effect told, that on this point, as well as in his wild and contradictory statements about his wife being fully supplied, they were bound in law

to believe him.   But the jury alone are to judge of the credibility of the witnesses and the weight due to their testimony, and in this instance they would have been eminently justified in disbelieving the defendant, and rejecting his entire testimony.  (Steamboat, City of Memphis, vs. Matthews, 28 Mo., 248 ; M'Afee vs. Ryan, 11 Mo., 365.)

*A. Reese*, for Respondent.

I.  The notice imposed on plaintiffs the burden of showing that, from the date of its service, Mrs. Armstrong absolutely needed the goods purchased to make her comfortable.  (2 Kent, 4th Ed., 146 ; 40 Barb., 290 ; 24 U. S. Dig., 320 ; Kellar vs. Phillips, 25 U. S. Dig., 274.)

VORIES, Judge, delivered the opinion of the court.

This action was brought in the St. Louis Circuit Court to recover upon an account for goods sold and delivered.  The account sued on consisted of various items of goods charged to have been sold at various times, commencing on the 30th of March 1869, and ending on the 30th day of Dec. 1869, amounting in the aggregate to the sum of $1071.60.  The petition charged that the goods set forth in the account were furnished by plaintiffs to Laura M. Armstrong, the wife of the defendant, and at her request, and that the articles consisted of sundry articles of clothing which were necessary for her, and were reasonably worth the sum charged, etc.

The defendant states in his answer, that whether the plaintiffs furnished defendant's wife the goods mentioned in the plaintiffs' schedule attached to plaintiffs' petition at her request, defendant has no knowledge or information sufficient to form a belief, and asks strict proof.  He denies any indebtedness to plaintiffs.   Defendant says, that before the said alleged purchases he gave notice to said Barr, Duncan Co., (the assignors of plaintiffs) not to credit his wife on his account. Defendant avers that at and during the whole time of the said alleged purchases by his wife, between the 30th day of March and the 29th day of December, 1869, as stated in plaintiff's schedule, his wife and children were already supplied with clothing and apparel reasonably sufficient and suitable

to make them comfortable at home, and to enable them to appear in reasonable order and style and condition in society, according to the real pecuniary condition of the defendant; and he denies that the articles so alleged to have been furnished his said wife were necessaries, and he denies that they were worth $1071.60, etc., and prays judgment.

The plaintiffs, in their reply to the defendant's answer, deny the notice set up in the answer, deny that defendant's wife and children were, during the time named in the answer, already supplied with clothing and apparel sufficient or suitable to their condition or otherwise by said defendant, etc.

The case was tried by a jury. Upon the trial, the plaintiffs offered in evidence to prove the issues on their part, the deposition of Laura M. Armstrong, the wife of defendant. This deposition was objected to on the part of the defendant, on the ground that she, being the wife of defendant, her evidence was incompetent against her husband, the defendant's counsel at the same time admitting that the purchases of the goods sued for, were made by Mrs. Armstrong, the wife of defendant, and delivered to her; that at the time defendant and his wife were living together at the Planters House, as husband and wife, and the defendant objected to the evidence of said witness to prove any further fact. The court sustained the objection and the plaintiff excepted. The plaintiffs then introduced evidence which tended to prove that defendant was worth in property, from three to four hundred thousand dollars; that but little of his property was productive; that his income was not large; that from the 30th of March, 1869, to the 29th of December of the same year, defendant and his family, consisting of his wife and two boys of from 8 to 10 years old, boarded at the Planters House in St. Louis, a first-class hotel; that they associated with the best of society; that Mrs. Armstrong and the children were always well clothed, and never seemed to lack for anything in that time.

The plaintiffs then introduced a dry goods retail merchant of St. Louis, to whom the bill of items contained in the account sued on was exhibited, and the witness asked to take

into consideration Mr. Armstrong's condition in life, and state what was the judgment of the witness on the bill, whether it was reasonable or not? The defendant objected to the question, and the court sustained the objection, on the ground that the question was not a question for experts to give their judgment on, but that it was a question for the jury under the evidence. To this ruling of the court, the plaintiff again excepted. The plaintiff also introduced a witness, who, after. examining the bill sued on, testified that the goods named in the bill were all sold to Mrs. Armstrong, and that they were such articles as are usually purchased and used by ladies in St. Louis.

The defendant was introduced as a witness in his own behalf, and testified that he had, on the 12th day of July, 1869 served on Barr, Duncan & Co. (the parties by whom the goods sued for were sold) a notice in writing; that he had at the time retained an exact copy of the notice served on them; that he had written the notice retained and the one served or delivered to them at the same time ; that he had served the one on them and retained the other, marking or writing on it the word "copy"; that the two were exactly alike in every particular. The defendant's counsel then offered to read the copy or notice retained in evidence. The counsel for the plaintiffs objected to the evidence, on the ground that the original notice must be produced, or that notice to the plaintiffs to produce the original should have been given. The court overruled the objection, and exceptions were taken. The notice was then read as follows:

"St. Louis, July 12th, 1869.

"Messrs. Barr, Duncan & Co. Gentlemen : I hereby give you notice that I will pay no bills contracted at your establishment by any member of my family, and you will, therefore, give no credit to any person or persons on my account, without my written order. Very respectfully, D. ARMSTRONG,"

Armstrong also testified that he had always furnished his family with every necessary required, either in food or clothing or otherwise, as the same was required, but had objected

to going in debt for the reason that he was hard run for money at the time, etc.

At the close of the evidence, the plaintiffs requested the court to instruct the jury as follows: " The court instructs the jury that the legal obligation rests upon every husband to supply his wife with necessaries suitable to her situation and his own circumstances in life. The wife's necessaries are such articles as the law deems essential to her health and comfort, such as food, lodging, clothing and medical attendance. And in this case, if the jury find from the evidence that at the time the goods in question were delivered to Laura M. Armstrong, she was the wife of the defendant; that they were living together as husband and wife at the Planters House in the city of St. Louis; that the defendant was then the owner, of the property, effects and means of the kind and value stated by the witnesses; that the goods in question were suitable to the situation of the defendant's wife and his own circumstances and condition in life, then the jury should find for the plaintiffs and assess their damages at the reasonable value of the goods, as shown by the evidence."

2nd. "The court instructs the jury that if the defendant and his wife, Laura M. Armstrong, were living together and boarding and lodging at the Planters House, in the city of St. Louis, at the time the goods in question were delivered to the wife, she then had an implied authority in law to purchase necessaries for herself, and to pledge the credit of her husband therfor, and he is liable therefor without reference to his assent,and even in spite of his dissent. It is for the jury to determine from all the evidence in the case, whether the goods in question were suitable to the situation of the defendant's wife and his own circumstances and condition of life, and if the jury find that they were so suitable, and that the defendant had failed to properly supply his wife with necessaries, then he is liable in this action, notwithstanding he had given notice to the plaintiff not to trust his wife."

3rd. "The court instructs the jury that a husband is bound to supply his wife with necessaries suitable to her situation and his own circumstances and condition in life, and upon his

failure so to do, she has the right to supply herself at his expense, and that he cannot escape this obligation by giving notice to persons not to sell to her on his credit. If therefore, the jury find that the goods in question were necessaries suitable to the situation of defendant's wife and his circumstances and condition in life, and were sold and delivered to her upon his credit, and that he had failed to supply her with such necessaries, then they will disregard any notice he may have given to the plaintiffs not to sell to his wife on his credit, and find a verdict for the plaintiffs and assess their damages at the reasonable value of the goods as shown by the evidence."

These instructions were refused by the court and exceptions taken. The court then instructed the jury as follows:

1st. "The court instructs the jury that the legal obligation rests upon every husband to supply his wife with necessaries suitable to her situation and his own circumstances in life. The wife's necessaries are such articles as the law deems essential to her health and comfort, such as food, lodging, clothing, and medical attendance, and in this case if the jury find from the evidence that at the time the goods in question, sold prior to July 12th, 1869, were delivered to Laura M. Armstrong, she was the wife of the defendant ; that they were living together as husband and wife, at the Planters House, in the city of St. Louis ; that the defendant was then the owner of the property, effects and means of the kind and value stated by the witnesses ; that the goods in question were suitable to the situation of the defendant's wife, and his own circumstances and condition in life, then the jury should find for the plaintiffs, and assess their damages at the reasonable value of the goods sold and delivered before July 12, 1869, as shown by the evidence."

2nd. "The court instructs the jury that plaintiffs cannot recover in this action for any goods furnished after the 12th day of July, 1869."

The jury found a verdict in favor of the plaintiffs, assessing their damages at the sum of $344.00, the value of the goods sold before the notice was given on the 12th of July.

The plaintiffs filed a motion for a new trial, which being overruled and final judgment being rendered on the verdict,

they excepted and appealed to General Term, where the judgment rendered in Special Term was affirmed, and from which last judgment the plaintiffs have appealed to this court.

The first objection made in this court to the rulings of the Circuit Court, is in reference to the exclusion of evidence offered by the plaintiffs on the trial. The plaintiffs introduced a witness who was acquainted with the business of retailing goods in the city of St. Louis, to look at the account sued on and state whether the goods, in his judgment, were reasonable for the wife of a man in defendant's circumstances. This question was objected to by the defendant and excluded by the court, on the ground that the fact sought to be proved was not a question for an expert, but a question for the jury to decide from the facts proved. It is sufficient to say in reference to this evidence, that as the case was tried and decided by the jury, it is perfectly immaterial in this case whether the evidence was material and proper evidence or not; for there was ample evidence admitted in the case to show that the articles sold to the defendant's wife were such articles as were used and worn by ladies who moved in the same circle of society with the wife of the defendant, and so far as that question is concerned, the jury, under the instructions of the court found in favor of the plaintiffs, finding a verdict in their favor for all goods sold before the 12th day of July, 1869; the case going off as to the remainder of the account on another question growing out of the question of notice, so that it is perfectly apparent that the exclusion of the evidence in no possible view of the case affected or could affect the plaintiffs' rights.

It is next objected that the court improperly excluded the deposition of Mrs. Armstrong, the defendant's wife, as evidence in the case against the defendant. When the deposition was offered in evidence, the defendant admitted that the goods sued for were purchased by the wife and delivered by the plaintiffs to her at the time named in the account sued on, and that the defendant and his wife were living together, boarding at the Planters House, in the city of St. Louis, at the time, as husband and wife.

The defendant objected to said deposition being read to prove any further facts in the case. This objection was sustained and the deposition excluded. By the fifth section of the statute of this State concerning Witnesses (2 Wagn. Stat., 1373) it is provided that "No married woman shall be disqualified as a witness in any civil suit or. proceeding prosecuted in the name of or against her husband, whether joined or not with her husband as a party in the following cases, to-wit: First, In actions upon policies of insurance of property, so far as relates to the amount and value of the property alleged to be injured or destroyed. Second, in actions against carriers, so far as relates to the loss of property and the amount and value thereof. Third, in all matters of business transactions, where the transaction was had and conducted by such married woman as the agent of her husband; *Provided*, that nothing in this section shall be construed to authorize or permit any married woman, while the relation exists, or subsequently, to testify to any admissions or conversations of her husband whether made to herself or to third persons."

After the admissions made by the defendant it is difficult to see how the wife's evidence could become admissible to prove any other facts in issue in the action. It might be that she was impliedly her husband's agent to purchase necessaries, but it was admitted that she had purchased the goods sued for, and the facts necessary to constitute her his agent would of course have to be proved by other evidence, because until it was shown that she was the agent of her husband in the transaction, she would be incompetent to testify in reference thereto, and there is no other provision of the statute under which she could possibly be rendered competent. But it is contended by the plaintiffs that the statute cannot be construed to restrict the competency of a wife to testify against her husband at common law, and that under the circumstances of this case the wife of the defendant was competent to testify by the common law. It is admitted that at common law the general rule is that the wife is incompetent to testify either for or against her husband, but it is claimed that there are exceptions to that rule and that the evidence in this case which was excluded, comes

within these exceptions. To this it may be answered, that the deposition excluded is not copied in the bill of exceptions so that we can see the exact facts offered in evidence and which were excluded, and that it would be very difficult to say whether the facts or evidence offered would come within these exceptions contained in the statute or at common law. One of these exceptions named by Greenleaf, is where the wife, if excluded, would be exposed to personal injury without any means of redress. if she were not permitted to testify. Upon a similar ground of necessity, Mr. Greenleaf says that a wife has sometimes been admitted "to testify to secret facts which no one but herself would know. Thus upon an appeal against an order of filiation in the case of a married woman, she was held a competent witness to prove her criminal connection with the defendant, though her husband was interested in the event; but for reasons of public decency and morality she cannot be allowed to say after marriage, that she had no connection with her husband, and that therefore her offspring is spurious." (1 Greenl. Ev., §§ 343–344 ; State v. Berlin, 42 Mo., 572.) Now it is not shown that any evidence was offered, or that any evidence was contained in the deposition excluded, which tended to prove any personal violence to the wife, or that any such secret fact as is contained in the exceptions named by Greenleaf was offered in evidence, nor can it be perceived how any such facts could be material or proper evidence in the case, even if the witness had been competent to testify. I do not think that the rule laid down in the case of the State vs. Newberry, 43 Mo., 429, is at all applicable to this case ; so that from all that appears in the bill of exceptions in this case the deposition of the wife was properly excluded.

The next objection made by the plaintiffs is, that the defendant was permitted to prove that he had given notice to those furnishing the goods to his wife, not to sell her goods on his credit, by the production of what was proved to be an exact copy of the notice served, without having first given notice to the plaintiffs to produce the notice served on them, which they claim was the original notice. No notice to produce in such case was necessary. The notices in this case were both

written by the defendant at the same time; the proof shows that they were exactly alike, one delivered to Barr, Duncan & Co., the other retained by the defendant on which he wrote the word "copy." These papers were both of the same dignity. It could have made no difference which of the two had been served on the plaintiffs. In one sense each was a copy of the other, but in a legal sense they stood in the relation of duplicates to each other. And then as I understand the law, it is never required that a party should give notice to produce a notice in order to prove its contents. The rule is that notice to produce is never required where the instrument to be proved and that produced, are duplicate originals, nor where the instrument to be proved is itself a notice. (1 Greenl. Ev., § 561; Hughes v. Hayes, 4 Mo., 209.)

The only remaining questions to be disposed of in this case grow out of the giving of and refusing instructions by the court. It is contended that the court erred in refusing to give the three instructions asked for by the plaintiff as set forth in the statement of the case.

By the first instruction asked for by the plaintiffs, it will be seen that the jury are told, that if they find from the evidence that at the time the goods in question were delivered to the wife, the defendant and his wife were residing together as husband and wife, and that the defendant was then the owner of a large amount of property, &c., and that the goods in question were suitable to the situation of the defendant's wife and his own circumstances, then the jury should find for the plaintiffs the amount of the goods sold, &c. It will be seen that this instruction entirely ignores the main defense of the defendant to a great part of the account sued for. The instruction assumes that the presumptive assent of the husband to the purchase by the wife on his credit of such articles as are deemed necessaries, continues after he shall have made his dissent known by giving the trader selling the goods notice to desist from selling her goods on his credit.

The law, I think is the other way. The best authorities, and I think a majority of the courts as well as the elementary writers, now hold, that, in order to bind the husband for

goods sold the wife after the seller has had notice not to do so, the seller would be bound to show not only that the goods sold are included in the class of articles denominated necessaries, but he would also be required to show that the husband had failed to furnish his wife with such necessary articles. The seller in such case must show the absolute necessity for the purchase for the wife's comfort. (2 Kent's Com., [12th Ed.,] 146, 147; Schouler's Dom. Rel., 85; Kimball vs. Keyes, 11 Wend. 33; Mott vs. Comstock, 8 Wend., 544; Theriott vs. Bagioli, 9 Bosw., 578; Keller vs. Phillips, 40 Barb., 390.)

The first instruction wholly ignoring the fact of notice to the plaintiff not to credit the wife, was therefore properly refused by the court. The second and third instructions asked for by the plaintiffs, when all taken together, stated a correct abstract principle of law and should have been given if there had been any evidence in the case which tended to prove that the defendant had failed to provide his wife and family with necessaries suitable to her wants and situation in society and his condition in life. It seems from the record, that these instructions were refused by the court on the ground that there was no such evidence, and after a careful examination of the record I have not been able to find any evidence which in the slightest degree tends to prove that the defendant had failed to provide all necessaries for his wife, or that she was not already supplied in a proper manner. The court was therefore authorized to refuse these instructions as not being authorized by the evidence in the case. The instructions given by the court were erroneous. They assumed that the notice had been given by the defendant to the persons who sold the goods on the 12th day of July, 1869, not to sell goods on his credit, when the question whether the notice had been given or not should have been submitted to the jury, that fact was for the jury to find. The last instruction tells the jury that the plaintiffs cannot recover in this action for any goods furnished after the 12th day of July, 1869. The jury ought to have been told, that if they believed from the evidence that the notice read in evidence had been given to the persons selling the goods on the 12th day of July, 1869, then they were

Barr, et al. v. Armstrong.

not, from the evidence in the case, authorized to find against the defendant for any goods sold after that date. The first instruction given was subject to the same objection. It assumed that the notice had been given on that day. It is insisted by the defendant, however, that as the evidence of the defendant was clear, to the effect that the notice had been given on the 12th day of July, 1869, and no evidence to the contrary, that the judgment should not be reversed, even if the instructions did wrongfully assume the truth of that fact. It is very true that, in this case, the evidence was distinct and positive on the part of the defendant as to the service of the notice, and no attempt was made on the part of the plaintiffs to contradict it; although the parties receiving the notice, for aught that appears, could have been produced to contradict it. This being the case, if the question had been submitted to the jury, and the jury, against the unimpeached and uncontradicted evidence of the defendant, had found against the notice, or that no notice had been given, would the court have let the verdict stand? I suppose that in such case the court would not have hesitated to set the verdict aside. In fact, there seems to have been no other contest over the notice, except that the plaintiffs claimed that the original should be produced after the notice was admitted in evidence. There seems to have been no further contest over the fact of notice. Even the instructions asked for by the plaintiffs seem to assume that the notice had been given, and presented no issue in reference to that fact. The case seems to have been tried after the notice had been admitted in evidence, with the assumption that notice had been given, and this, I presume, is the reason why the court framed the instructions as they did. This court, therefore, notwithstanding that the instructions given by the court were erroneous in that particular, not being able to see how the plaintiffs were injured thereby, and the verdict seeming from the evidence clearly to be for the right party, will not reverse the judgment for that technical error. If there had been the least conflict in the evidence, or if the evidence in reference to the notice had been of a dubious character, the decision would have been different.

The other judges concurring, the judgment will be affirmed.