VAN NATTA v. THE PEOPLE'S STREET RAILWAY, ELEC-
TRIC LIGHT & POWER COMPANY *et al., Appellants.*

### Division Two, March 3, 1896.

1. **Carrier:** STREET RAILWAY : RATE OF SPEED : NEGLIGENCE. Inas-
much as negligence in operating a street car at too high a rate of
speed depends on the place of the accident and the facts surrounding
it, it was not error to submit to the jury the question whether the car
that caused the injuries to plaintiff was moving at a rapid rate of
speed, where the evidence disclosed that the rate was from three to
five and a half miles an hour.

2. ———: NEGLIGENCE : INSTRUCTION. An instruction considered and
*held* not objectionable in that it did not tell the jury what facts
would constitute negligence on the part of the defendant.

3. **Practice:** INSTRUCTION : ASSUMING FACT. An instruction which
assumes a fact to be true is erroneous except where such fact is
admitted, or the evidence thereon is clear and undisputed.

4. **Carrier:** NEGLIGENCE : PASSENGER : INSTRUCTION. An instruction
in an action by a passenger against a carrier for injuries claimed to
have been caused by its negligence is erroneous which imposes a
higher degree of care on the carrier than the law requires.

5. ———: INFANT PASSENGER : DEGREE OF CARE REQUIRED. An in-
struction as to the degree of care required of a boy injured by a
street car should state that the law requires the exercise of care and
prudence equal to plaintiff's capacity, knowledge, and experience,
regardless of the care and prudence boys of his age and capacity are
required to exercise.

*Appeal from Buchanan Circuit Court.*—HON. H. M.
RAMEY, Judge.

REVERSED AND REMANDED.

*R. A. Brown* for appellants.

(1) The first instruction given on behalf of the
plaintiff was clearly erroneous for the following rea-

sons:  *First.*  It submitted to the jury questions not
based upon any evidence in the case. It left it to them
to determine whether or not the east bound car passed
the west bound car at a rapid rate of speed, when all
the evidence and the physical facts in the case showed,
not only that the car was going slow, but that it was
impossible for it to run fast at the place where the
accident occurred.  *Bowen v. Railroad,* 75 Mo. 428;
*Skyles v. Bollman,* 85 Mo. 35; *Tabler v. Railroad,* 93
Mo. 87; *Harty v. Railroad,* 95 Mo. 371; *O'Connor, etc.,
Co. v. Frank Alexe,* 28 Mo. App. 184; *Fairgrieve v. Mob-
erly,* 29 Mo. App. 155; *Proctor v. Loomis,* 35 Mo. App.
489; *Anchor Milling Co. v. Walsh,* 37 Mo. App. 573.
*Second.*  It did not advise the jury as to the constituent
elements of negligence, but left them to determine for
themselves what facts would make good the charge of
negligence against defendants, thereby placing defend-
ants at the mercy of the imagination, speculation, and
loose conceptions of the jury.  What constitutes negli-
gence or care is a question of law, and whether it exists
in a given case is a question of fact for the jury.  The
court should have told the jury what facts would con-
stitute negligence, if they found them to exist, and it
was the province of the jury only to determine whether
or not such facts existed.  *Zimmerman v. Railroad,* 71
Mo. 491; *Yarnell v. Railroad,* 75 Mo. 583; *Senate v.
Railroad,* 41 Mo. App. 297; *Wilburn v. Railroad,* 36
Mo. App. 215; *Kick v. Doerste,* 45 Mo. App. 140;
*Ravenscraft v. Railroad,* 27 Mo. App. 617.  (2) There
is no evidence in this case that the defendant railway
company was guilty of any negligence, which contrib-
uted to plaintiff's injury, and the demurrer offered at
the close of plaintiff's testimony, and defendants'
refused instructions numbered 1 and 2, in the nature
of demurrers, offered at the close of defendants' testi-
mony, should have been given.  *Kennedy v. Railroad,*

43 Mo. App. 4; *Maschek v. Railroad*, 71 Mo. 276; *Mayer v. Railroad*, 64 Mo. 274; *Isabel v. Railroad*, 60 Mo. 482; *Railroad v. Spearen*, 47 Pa. St. 300; *Railroad v. Hammel*, 44 Pa. St. 375.

*Spencer & Mosman* for respondent.

(1) The negligence of Highland, the conductor, and Wilkins, the motoneer of the east bound car (number 21), was so gross, that on that ground alone, the defendant should be held liable in this case. That car was run at the highest speed possible at that point, past the west bound car, which they well knew had stopped to allow passengers to alight. This was not only contrary to the dictates of ordinary care and prudence, but in defiance of the well known regulations of the company. (2) The negligence of Harry Tibbs, the conductor of the west bound car (number 19), from which the boys alighted, if it was the only negligence in the case, would render the defendant liable. He stopped his car and assisted the boys to alight. This was an assurance on the part of the company that it was safe for them to alight there. If there were any dangers or perils to anyone in alighting there, he was bound to warn them of it. He did not realize till after the boys were struck, that car number 21 was approaching. If the bell of that car was rung as defendants' witnesses say, he should have heard it and given the boys timely warning to look out for the car. If the bell was not rung, though it might show the men in charge of the other car negligent, it was no excuse for him. He was bound to warn the defendant passengers of any dangers to be incurred alighting at that point. *Burbridge v. Railroad*, 36 Mo. App. 683; *McGee v. Railroad*, 92 Mo. 208; *Weber v. Railroad*, 100 Mo. 203; *Eswin v. Railroad*, 96 Mo. 297. (3) The de-

fendant's negligence in failing to provide its cars with fenders that would prevent anyone knocked down from coming in contact with the machinery, or being run over by the wheels, is of itself sufficient to render the defendant liable in this action. *Weller v. Railroad*, 120 Mo. 654; *Rosenkranz v. Railroad*, 108 Mo. 17; *Furnish v. Railroad*, 102 Mo. 677; *Loe v. Railroad*, 57 Mo. App. 350. (4) *First.* There was no error in giving plaintiff's first instruction. The jury were entitled to find from the physical facts shown in evidence, without direct proof, that the rate of speed was negligent under the circumstances of this case. *Chartrand v. Railroad*, 57 Mo. App. 427; *Baker v. Railroad*, 122 Mo. 548. *Second.* It correctly stated the measure of care required of the defendant. *Bischoff v. Railroad*, 121 Mo. 220; *Humbird v. Railroad*, 110 Mo. 80; *Boland v. Railroad*, 36 Mo. 492; *Sandifer v. Lyon*, 52 Mo. App. 558; *Schmitz v. Railroad*, 119 Mo. 268; *Ridenhour v. Railroad*, 102 Mo. 287; *Burger v. Railroad*, 112 Mo. 250. *Third.* The demurrer was rightly overruled. *Barr v. City*, 105 Mo. 550; *Henry v. Railroad*, 113 Mo. 536; *McGee* case, *supra; Winter's* case, *supra. Fourth.* The court did not err in refusing defendant's instructions. It was the defendant's duty to so use its franchise in the public streets as not to endanger the public. *Burger v. Railroad*, 112 Mo. 246; *Hamilton v. Mining Co.*, 108 Mo. 373; *Huhn v. Railroad*, 92 Mo. 449; *Bluedorn v. Railroad*, 108 Mo. 444; *Lockwood v. Railroad*, 122 Mo. 98. *Fifth.* Obedience to the ordinance would have prevented the accident, and hence the defendant is liable. *Hanlon v. Railroad*, 104 Mo. 387 .

BURGESS, J.—From a judgment in favor of plaintiff, a boy nine years of age, in the sum of $7,000, against defendants for personal injuries sustained by

him by being run over by the cars of defendant com-
pany, defendants appealed.

The accident happened about half past 10 o'clock
in the forenoon of the twentieth day of July, 1892, at
the intersection of Frederick avenue with Eleventh and
Faraon streets in the city of St. Joseph, Missouri. At
that time defendant company owned and operated by
electricity a double track line of street railway, the
tracks of which lie parallel with each other, near the
center of the avenue, as close together as they can be
laid, so as to permit the cars to pass each other. The
tracks run east and west. Cars moving east do so on
the south track, while those moving west do so on
the north track.

Plaintiff, his brother, and Clarence Corby, desiring
to go west to Eleventh street, boarded a car (number
19) at the east end of the avenue. When the car
arrived at Eleventh street, the point at which plaintiff
and his companions desired to alight, the conductor in
charge of the car gave the usual signal to the motor-
man for the car to stop, in order that they might do so.
The evidence as to whether or not the car came to a
full stop before the boys started to alight, as to what
transpired there at that time, and especially as to what
was said and done by the conductor, was conflicting.
Just as the boys had alighted, and started around the
rear end of the car toward the sidewalk on the south
side of the avenue, a car (number 21) pulled up from
the west, ran against the plaintiff and his brother
knocking them down, the plaintiff going under the car,
his left leg was caught in the cogwheels which propel
the car, and he shoved along on his back five or six
feet before the car was stopped. Several efforts to
release plaintiff's leg, which was badly crushed below
the knee, from the cogwheels, proving unavailing, it

became necessary to amputate it before he could be removed from under the car. This car was stopped at the intersection of the line of Eleventh street with Frederick avenue. It also appeared that a car moving at the same rate of speed that this was could be stopped in eight or ten feet.

An ordinance of the city of St. Joseph was read in evidence, which required all street railway companies to provide each car with a fender "placed not more than two inches from the ground or surface of the street," and to "entirely surround the running gear of the car. Such fender shall be pointed at each end of the car, shall extend as far as the platform and shall be so constructed and placed as to afford the best possible protection to persons with whom such car might come in contact." There were no fenders on the car at the time of the accident, but it was shown to have had fenders on it the day next thereafter.

Defendant introduced evidence tending to show that the cars could not be run with fenders upon them, such as required by the ordinance, that a gutter at Edmund crosses the track, and every time the car passed over the gutter, the car dipped so that the fenders were broken off. In opposition to this, defendant's own servants swore that fenders sometimes lasted a week; that every trip over the gutter did not break them off; that defendant had men in its employ whose duty it was to repair and replace the fenders. Plaintiff's evidence showed that the fenders remained on the cars for a greater part of a month.

The defendant, John R. Owens, after the accident, was appointed receiver of the defendants' railway and property, and he was, therefore, made a party defendant in the cause.

Plaintiff's first instruction is criticised in that it is insisted that it submitted to the jury questions not

based on any evidence; left them to determine whether or not the east bound car passed the west bound car at a rapid rate of speed, when all the evidence and physical facts showed to the contrary, and did not advise them as to the constituent elements of negligence.

The evidence with respect to the rate of speed at which the car that caused the injury was moving at the time placed it from three and one half to five miles an hour; two witnesses stated about twice as fast as a man can ordinarily walk, and one witness about three times as fast as he could walk. The cars passed each other in the middle or near the east line of Eleventh street, and the ordinance of the city which was read in evidence, provides that cars shall not be stopped on crosswalks nor in front of intersecting streets, but that they shall stop with the rear platform partly over the crosswalks when allowing passengers to alight.

What constitutes negligence in any given case, must necessarily depend upon the facts connected with the accident which is claimed to have been occasioned thereby, and the place where it occurred. What would be a negligent rate of speed for an electric street car in one locality, would not necessarily be so in another part of the same city or the same street. Plaintiff's right to the use of the street where the accident occurred was concurrent with that of defendant company. It happened under circumstances where and when the law required of those in charge of the car the exercise of such care and watchfulness, including its rate of speed, as the circumstances of the case, and the place where the accident occurred. Under the facts and circumstances in evidence the court would not have been justified in declaring as a matter of law, that the car was not moving at a rapid rate of speed at the time of the accident. There was sufficient evidence on this question to justify giving the instruction.

It is further insisted that this instruction is vicious, in that it does not advise the jury what facts would constitute negligence on the part of those in charge of the car which ran over the plaintiff. This objection does not seem to be well taken. After instructing the jury that "if they find from the evidence that defendant's road consisted of two tracks, which were in close proximity to each other; that plaintiff was a passenger in its west bound car upon the north track; that the car stopped to permit him to alight; that on alighting from said car plaintiff passed in the rear of said west bound car and attempted to cross the south track of defendant's road to the sidewalk on said street; that the servants of defendant in charge of the east bound car as they approached the west bound car saw that it was stationary and knew that their view of the street was obstructed by the stationary west bound car; and you further find that said servants in charge of said east bound car approached said stationary car while plaintiff was alighting from the same, at a rapid rate of speed, without giving any signal to warn plaintiff of their approach and without checking the speed of the same, and in so doing were guilty of negligence, and in consequence thereof the plaintiff * * * was knocked down and injured," etc. The instruction is unusually full, and covers any and all grounds of objection urged against it.

But even if it were faulty in that it did not tell the jury what facts would constitute negligence on the part of defendant, when it is read in connection with defendants' first instruction, as it should be, any such suspicion is dispelled, as that instruction is the counterpart of plaintiff's and covers any supposed omissions or defects therein.

The second instruction given for plaintiff is as follows:

"2. It was the duty of the servants of the railway company in charge of the east bound car, in approaching and passing by a car which they saw standing on the street, or in the act of stopping, to let off passengers, to conduct and run said east bound car with great caution and care, and at such a rate of speed that they might be able to check and stop the same should it become necessary in order to avoid striking and injuring any one alighting and passing from such car to the sidewalk of said street, and if the jury find from the evidence that plaintiff, Allane Van Natta, received the injuries of which he complains while attempting to gain the sidewalk after alighting from the car, in consequence of the careless, reckless, and negligent manner in which the servants in charge of said east bound car managed and operated the same, while approaching and passing the car from which plaintiff had alighted, your verdict must be for plaintiff on the first count of the petition; provided, the plaintiff was exercising that degree of reasonable care usually exercised by boys of his age and capacity."

Several objections are urged against this instruction. The first is that it assumes that the servants in charge of the east bound car, *saw that the west bound car was standing still, or that they knew that it was in the act of stopping to allow passengers to alight,* when the evidence did not warrant such assumption.

That the car upon which plaintiff was a passenger was stopped in order to permit him to alight was one of the material allegations in his petition. This allegation was put in issue by the answer. The evidence was conflicting as to whether or not the car had stopped at the time plaintiff and his companions left it. It is true that it showed that the conductor in charge of it rang the bell and signaled the motorman to stop the car for that purpose, but in assuming under the cir-

cumstances these controverted facts, especially when the ordinance of the city prohibits street cars from stopping in front of intersecting streets, and requires them to stop with the rear platform partly over the cross-walks when allowing passengers to alight, that the servants in charge of the east bound car knew that it was stopping in violation of the ordinance for that purpose, the instruction is erroneous. *Bank v. Crandall*, 87 Mo. 208; *Wilkerson v. Thompson*, 82 Mo. 328; *Peck v. Ritchey*, 66 Mo. 114; *Fullerton v. Fordyce*, 121 Mo. 1. It is only in case the facts are admitted or the evidence with respect thereto is clear and undisputed that such facts can be assumed to be true by instruction. *Barr v. Armstrong*, 56 Mo. 577; *Caldwell v. Stephens*, 57 Mo. 589.

The second objection is that it imposed on defendant railway company a higher degree of care in the operation of its east bound car than is required by law. This criticism is not without merit. While defendant company owed to plaintiff the highest degree of care and was bound to run its cars with great caution and care in order to protect him, he being a passenger, this instruction imposed upon it a still higher duty, that is, to run its car at such a rate of speed that those in charge of the car might be able to stop the same should it become necessary in order to avoid striking and injuring anyone alighting and passing from such car, regardless of the place, or circumstances under which plaintiff left the car or the injury occurred. The carrier, however, must be without fault or negligence. *Leslie v. Railroad*, 88 Mo. 50; *Weber v. Cable R'y Co.*, 100 Mo. 194.

A still further objection is that the instruction did not properly define plaintiff's duty, in that it only required of him the exercise of that degree of reasonable care, "usually exercised by boys of his age and

capacity," while it should have gone farther and told the jury the law required of him the exercise of care and prudence equal to his capacity, age, knowledge, and experience, regardless of what care and prudence boys of his age and capacity are required to exercise. In this regard the instruction is in substantial compliance with the ruling in *Ridenhour v. Railroad*, 102 Mo. 270; *Spillane v. Railroad*, 111 Mo. 555; *Burger v. Railroad*, 112 Mo. 238, and must be held sufficient.

However, upon a retrial, we would respectfully suggest that it be made to meet the objections now urged against it.

Defendant's objection to plaintiff's third instruction is untenable. Whether the car that caused the accident was running at an improper and dangerous rate of speed, when meeting the car going in the opposite direction, the place and circumstances considered, was a question for the consideration of the jury under the evidence.

It is unnecessary to say more with respect to the objections urged against plaintiff's sixth and ninth instructions, than they seem to us to be free from grounds for such objections.

As to whether the cars could be operated with fenders attached was a question for the consideration of the jury, under the evidence, which seems to have been fairly submitted to them by the instructions.

No error was committed in refusing instructions asked by defendant, as those that were given on that side of the case, presented it very fairly from their standpoint.

Nor was there error committed in refusing the instructions asked by defendant in the nature of demurrers to plaintiff's evidence. As to whether he was in the exercise of such reasonable care as usually exercised by boys of his age and capacity under the evi-

dence at the time of the accident, was a question upon which reasonable minds might well differ, and entitled him to have that issue submitted to the jury.

For error committed in giving plaintiff's second instruction, the judgment is reversed, and the cause remanded to be tried in accordance with the views herein expressed. GANTT, P. J., and SHERWOOD, J., concur.