Whitehead v. Atchison.

WHITEHEAD v. ATCHISON *et al.*, *Appellants.*

Division One, December 23, 1896.

1. **Appellate Practice**: VERDICT: INSTRUCTIONS. Where the verdict on the undisputed evidence is for the right party, the judgment will not be reversed for error in the instructions.

2. **Land**: MONUMENTS: COURSES AND DISTANCES. While monuments on the earth's surface will control courses and distances, such is not the case where they are not visible or are placed by subdividing cotenants for their own convenience.

3. ———: PLAT: ESTOPPEL. A purchaser of land duly platted with plat recorded may, as against the person filing the plat, assume that it is correct and that a lot purchased by him is of the dimensions with courses and distances indicated on the plat.

*Appeal from Jackson Circuit Court.*—HON. CHAS. L. DOBSON, Judge.

AFFIRMED.

*M. Campbell* for appellants.

(1) There was not a *scintilla* of evidence to show that the land in dispute was in lot 1. In ejectment it is essential to plaintiff's case that he show such a right as is necessary to a recovery under our law. *Duncan v. Noble*, 99 Mo. 188. (2) The court erred in its rul-

ings on the instructions. *Stone v. Hunt*, 114 Mo. 66; *Mather v. Walsh*, 107 Mo. 121; *Wilkerson v. Eilers*, 114 Mo. 245; *Kincaid v. Dormay*, 47 Mo. 337; *Bell v. Jamison*, 102 Mo. 74; *Whitehead v. Ragan*, 106 Mo. 231.

*Moore & Vaughan* and *R. O. Boggess* for respondent.

(1) The trial jury found for the plaintiff on the issue whether the stones were placed as monuments at the southwest and southeast corners of lot 1, and this finding is conclusive on appeal. (2) Natural monuments must prevail over artificial ones and calls for quantity must yield to calls for course and distance. *Orrick v. Bower*, 29 Mo. 210; *Kronenberger v. Hoffner*, 44 Mo. 185. (3) Landowners can not make a survey and plat for partition, plant stones as monuments for corners, out of sight, beneath the surface of the earth, mark the courses and distances bounding the subdivision, and mark these and the area thereof, without noting the existence of such stones on the survey or plat of the subdivision, and calling for them as monuments in the deeds of partition, wherein such stones have been allowed to control. It is claimed by appellant that the opinion delivered in this case, by this court, when it was here at an earlier date, reported 106 Mo. 231, goes to this extreme. On behalf of this court we controvert the assertion, and insist, *first*, the language employed by the court will not justly bear that interpretation; *second*, none of the authorities cited by the court support the proposition, and, *third*, if the opinion so holds it is wrong, and ought to be at once overruled. *Loring v. Norton*, 8 Maine, 61; *Jackson v. Moore*, 6 Cow. 7; *Evans v. Green*, 21 Mo. 170; *Coburn v. Coxeter*, 51 Maine; *Hart v. Rector & Dobbins*, 13 Mo. 497; *Shutz v. Lindell*, 40 Mo. 330.

ROBINSON, J.—This case, between the same parties and upon identically the same state of facts, was before this court and is reported as *Whitehead v. Ragan* in the 106 Mo. 231. When here then, the judgment of the circuit court was reversed and the case remanded for a new trial. What became of that case is not disclosed by the record before us, but on the eighteenth of June, 1892, plaintiff filed his petition as a basis for the present suit, asking for the recovery of possession of fifty feet off of the south end of lot one of Kritzer & Ragan's subdivision, etc., claimed to be unlawfully withheld from him by defendant, and for damages, and monthly rents and profits. Upon the issues as joined, the case proceeded to its second trial before the circuit court, upon what might be said to be identically the same state of facts as was developed at the former trial when the case reached this court on its first appeal.

The statement of facts as detailed in that opinion will be adopted literally as the statement of facts in this, and is as follows:

"About the year 1870 defendant, Mary Ragan, and one Virginia Kritzer, being the owners of the whole tract, had it subdivided into seven lots numbered from 1 to 7. A plat of the subdivision was made and recorded. The dimensions of each lot and the area were marked on the plat. Lot 1 is designated on the plat as a parallelogram, eleven and thirteen hundredths chains north and south, five and thirty-four hundredths chains east and west, containing five and ninety-four hundredths acres. This lot lay in the northwest corner of the tract. Lot 4 lay south of and adjoining lot 1, but extending six and sixty-six hundredths chains further east. The north and south line on the west side of lot 4 as marked on the plat was

eight and seventeen hundredths chains, and the lot contained twelve and ninety-two hundredths acres.

"On the first day of September, 1870, defendant conveyed, by quitclaim deed, to Virginia Kritzer, all her interest in lots 1, 5, and 6, reciting in the deed that lot 1 contained five and ninety-four hundredths acres 'as will appear by reference to the recorded plat of said subdivision.' March 17, 1885, Virginia Kritzer and husband conveyed to Larkin and Blackmar, by warranty deed, lot 1 under the following description: 'Lot number 1 in Kritzer and Ragan's subdivision of the east half of the northwest quarter of section 21, township 49, range 33, containing five and ninety-four hundredths acres more or less, including thirty feet roadway.'

"April 22, 1886, Larkin and Blackmar conveyed, by warranty deed, to plaintiff Whitehead, 'lot 1 in Kritzer and Ragan's subdivision in east half of the northwest quarter, section 21, township 49, range 35, in Jackson county, Missouri.' When he purchased he was not shown the corners of the lot, but was referred to the plat for quantity, courses and distances.

"At the time of plaintiff's purchase, lots 1 and 4 were included in one inclosure. Soon thereafter defendant built an east and west fence, as she claimed, on the north line of lot 4 for the purpose of a separate inclosure of that lot. Plaintiff claims that this fence is about thirty-five feet too far north and included that quantity of lot 1, to recover which this suit is prosecuted.

"An accurate measurement of the north and south line of plaintiff's lot 1, commencing at defendant's fence, shows an unquestioned shortage of thirty-four and fifty-eight hundredths feet as compared with the whole length of the lot as shown on the plat. All the

foregoing facts were shown by plaintiff, and are not disputed.

"Defendant offered evidence which tended to prove that, when the subdivision was made, stones were planted to mark the four corners of lot 1; that after she conveyed her interest in lot 1 to Kritzer in 1870, the line between the stones planted for the southwest and southeast corners of lot 1 was adopted by them as the true division line between lots 1 and 4, and was so recognized and used until plaintiff purchased lot 1; that the north and south lines of the subdivision on the west side were fifty-one feet shorter than was shown by the plat; and that the division fence was so marked, held and recognized."

It might be well, at this point, to further add that no witness for defendant in attempting to show that stones were planted to mark the corners of lot 1, stated that they were visible upon the surface of the ground, so as to indicate to one not familiar with the survey, their location, but all spoke of them as buried or hidden stones. No stones or monuments locating the southeast and southwest corners of lot 1 were visible to plaintiff when he purchased his lot, nor were the places where they were buried or planted pointed out or named to him.

At the close of the testimony, the trial court, in the case reported in the 106 Mo., directed a verdict for plaintiff and defendant prosecuted her appeal, alleging that action of the court as error. This court then sustained the contention of defendant, and reversed and remanded the cause for a new hearing, upon the theory, as expressed in the opinion as then announced, that the boundary line as actually located was a question for the determination of the jury, in the conflict between the contending lotowners, and that if the line as fixed by the stone between lots 1 and 4 was located upon the

lands when surveyed and subdivided for partition, and could be ascertained and determined, that should constitute the true division line between the lots, though it conflicts with the description given in the plats and the calls in the deeds in accordance therewith, made by the cotenant partitioners, and in all after conveyances affecting said lots.

At the close of the testimony in the present case the trial court, following in part the theory of the opinion in the 106 Mo., gave the following instructions for plaintiff, upon which the jury found a verdict in his behalf, for the giving of which, and the refusal of all instructions as asked by defendant, and for various reasons set out in the bill of exceptions filed herein, defendant again prosecutes this appeal.

"1. The burden of proof rests on the plaintiff and he must make out his case by the greater weight of the credible testimony in the case.

"2. If the jury believe from the evidence that at the time Kritzer and Ragan's subdivision was surveyed and platted the line between lots 1 and 4 thereof was marked and established by corner stones set under the directions of the surveyor, making said plat at the southwest and southeast corners of lot 1, and that the land in dispute lies north of the line fixed by said stones, then the finding must be for plaintiff; but if the land in dispute lies south of the line fixed by said stones, then the finding must be for defendants.

"3. If you believe from the evidence that at the time Kritzer and Ragan's subdivision was surveyed and platted no stones were set under the direction of the surveyor making said plat at the southwest and southeast corners of lot 1, thus marking and establishing the line between lots 1 and 4, then you will find for plaintiff.

"If you find for plaintiff as to the land in dispute you will assess his damages at such sum as you believe from the evidence he sustained from the commencement of this action to this date by reason of defendant's withholding from him the possession of said land, not to exceed one thousand dollars; and you will also find the value of the monthly rents and profit of said land, not to exceed twenty-five dollars per month."

If, under the facts of this case, it was proper to submit the issue to the jury, as to where the dividing line between lots 1 and 4 was located (by the cornerstones set up at the southeast and southwest corner of lot 1) the instructions as given might be subject to several objections urged against them; but as the verdict of the jury was for the right party, upon all the testimony offered, and as the court should have directed a finding for the plaintiffs upon the undisputed and admitted testimony, the error of instructions upon a theory of law, erroneous when applied to the facts of this case, are not hurtful, and do not amount to error that will justify the reversal of the judgment that was properly found upon the facts of the case.

While it is a well settled and recognized rule of construction, in the determination of boundaries of lands, that known and fixed monuments will control, though they conflict with the courses and distances called for in the deed, as was announced in the opinion in this case when here on the former appeal, and as now contended for by defendant, under the facts in this, as under the facts of that case, we have no monuments, no cornerstones, marking the division line between lots 1 and 4 that call for the exercise or enforcement of the doctrine above announced.

Here the cornerstones, according to defendant's own testimony, that were planted at the southeast and southwest corner of lot 1, marking the division between

lots 1 and 4, were buried out of sight and hidden from view of the passer-by, and where only discovered by aid of a surveyor with his line, compass and spade, and a street commissioner at his work of grading the street adjoining this property—no notice of the existence of such cornerstones on the plat of the subdivision—no call for them as monuments in the deeds of partition between this defendant and plaintiff's grantor's grantor —nothing to dignify the stones spoken of and referred to by defendant, and her witnesses, with the designation "monuments;" but they were to this plaintiff and all others unacquainted with their hiding places, as purposeless pebbles, thrown to their lodging place from the hand of nature.

If no stones, as monuments, were established as such, marking the boundaries of, or indicating the division line between lots 1 and 4, and if no mention or reference was made to them in the recorded plat of the subdivided tract of which lots 1 and 4 form a part, what error could a court commit against defendants for refusing instructions based upon the question as to the location of the would be monuments called stones, or in the giving of instruction numbered two for plaintiff directing a verdict against him, if the jury should find that when the land was surveyed, subdivided and platted, the line was marked and established by corner stones set under the direction of the surveyor, at the southeast and southwest corners of lot 1, and that the strip in dispute was south of said line as indicated by said stone; and in favor of plaintiff, if they should find the strip was north of said stones, or a line fixed thereby?  * * *

That the instruction as written is subject to the criticism of submitting to the jury an issue not raised by the testimony, is unquestionably true. No witness claimed or pretended to assert that the strip of ground

in dispute was north of a line fixed by the cornerstones sought to be established by defendant. Plaintiff's sole contention was that the line separating his lot from that of defendant, according to the courses and distances as indicated by the call on the recorded plat subdividing the tract into lots, as well as by the calls in his deed, was fifty feet south of the line indicated by the stones. Further criticism might be made to that, and to the other instruction as a whole, given for plaintiff, were we to adopt the theory to govern the disposition of the case, as was announced by this court when here on its first appeal; but as the jury made a proper finding on the facts as presented to them, and as upon the undisputed and admitted testimony, the court under the law governing the facts should have directed a finding for plaintiff in the first instance, no injury has been suffered by either party, no further notice will be made of the instruction as given for plaintiff, or those asked by defendant and refused.

Where there is a conflict between courses and distances, on the one hand, and monuments on the other mentioned in the description in a deed, the monuments will prevail and the courses and distances will be ignored, is a rule universal in its application; but if no monuments are mentioned in the deed (as none were, in any of the deeds made to this property, by *mesne* conveyances from defendant to the plaintiff herein, or in the subdivision plat of the entire tract, owned by defendant and her sister, of which lot one formed a part), the courses and distances named in the plat, to which the deed refers, must govern, and private or hidden monuments established by subdividing cotenants, for their own convenience, must yield or be ignored.

To warrant the court to receive and hear testimony on the theory of a mistake in the description of the

property by the courses and distances named in the deed, or the plat to which reference is made for them, and the substitution of a description according to monuments, as was attempted to be done in the case at bar, the deed itself, or the deed with proof of such facts as are competent to be shown, in aid of the construction of a written instrument, must contain the necessary elements to authorize the assumption of a mistake as a matter of legal construction; and as nothing inconsistent appeared in the deed to indicate error on the part of those who made it, or of him who held it, as intending in one instance, or as expecting in the other a different body of land than that actually named and described, it was error on the part of the court to permit the testimony offered by defendant tending to show where the would be southeast and southwest cornerstones of lot 1 were set by the surveyor, at a point thirty odd feet north of the true south boundary line of lot 1 as located by the courses and distances given by him in the plat of the subdivided tract which he made, and defendant had filed for record. That testimony tended not only to impeach the correctness of the location of the south boundary line of lot 1, but it would result in diminishing the quantity of ground assigned to that lot in express terms by the plat subdividing the entire tract, and would violate the orignal design and contemplation of the scheme for the subdivision of the tract by the defendant and her cotenant, and defeat their agreement to have the entire tract subdivided into seven lots in such a way, as that the quantity of ground in the three lots to be taken by the defendant Mary A. Atchison (formerly Mary A. Ragan) would exactly equal the quantity of ground to be embraced in the boundaries of the four lots to be and which were taken by defendant's sister in the subdivision to be platted and partitioned.

Whitehead v. Atchison.

To announce and adhere to, as a fixed rule of law, without qualification, the proposition announced in the 106 Mo., when these same litigants were then before the court, "If the line between lots 1 and 4 was located upon the land when surveyed and subdivided, and can now be ascertained and determined, that line will constitute the true division line between the lots [of the subdivision] though it conflicts with the description given in the plat," when the lots are sold by their lot number according to the subdivision plat, would be to involve the entire communities of our cities (where in most instances all conveyances of property are made by lot number simply, with a reference to the recorded plats for locating the courses and distances of the boundaries) in confusion and doubt as to the stability and fixedness of their possession and rights.

. With such a rule of construction in force, the lot-owner would be in complete ignorance of his true boundaries—would practically be without line or compass. No amount of investigation or research on his part would necessarily lead to a correct determination of his lot lines. If the courses and distances as indicated on the plat of which his lot is a part, are to be overturned, as in this case is sought by the hidden corners, or what is still worse by the testimony of the surveyor himself twenty odd years after the survey was made, that he established a line at a point thirty or fifty feet from where he certifies on the plat made by himself that it was located, the lot owner can know nothing of his boundaries. Such, as above mentioned, was the character of facts to which resort was made to set aside the lot boundary as indicated on the plat, and they will serve in the extremity of their reach, to emphasize the danger of the rule recognizing the right to permit the possibility of that character of facts as testimony in this kind of a contest.

Between the purchaser of a lot and one who promulgates a plat describing and defining the lots thereof, the purchaser will not be held at his peril to ascertain whether or not the plat agrees with the original survey of the land subdivided and platted; but he is justified in assuming that the plat is correct, and that the lot or lots purchased, by him are of the dimensions, and bounded by the courses and distances as indicated on the plat, to which, for particulars, his deed must refer, when the lot number alone is given in the deed. Every prompting of fair dealing, as every consideration of equitable estoppel, operates to deny defendant the benefit of the alleged secret, hidden cornerstones, to establish the lot line between lots 1 and 4 as against the boundary indicated by the courses and distances named in the plat, as well as in the description in the deeds affecting said lots, referring to that instrument for particulars. The judgment of the circuit court will be affirmed. BRACE, C. J., and BARCLAY, J., concur in result. MACFARLANE, J., concurs by separate opinion.

MACFARLANE, J.—I concur in the conclusion reached by my brother ROBINSON but do not agree to all that is said in his opinion.

This case was submitted to the jury upon this, with other, instruction:

"If you believe from the evidence that at the time Kritzer and Ragan's subdivision was surveyed and platted, no stones were set, under the direction of the surveyor, marking said plat as southwest and southeast corners of lot 1, thus marking and establishing the line between lots 1 and 4, then you will find for the plaintiff."

By this instruction the question whether the division line between lots 1 and 4, when originally

surveyed, was marked and designated by artificial monuments, was fairly submitted to the jury and the finding on that question was against the defendant. The facts upon which defendant relied were thus found against him.

On the trial a copy of the original plat was put in evidence, and from it there appears to have been no stones, or other monuments, fixed for the southwest and southeast corners of lot 1 and from this omission the jury properly inferred that none had been placed there. In the absence of such monuments the courses and distances marked on the plat must govern.

One who purchases a surveyed lot, or tract of land, without notice of the actual boundary, or corners, has the right to rely upon what appears from the original survey, or plat thereof, and is not bound by monuments which do not appear therefrom to have been placed upon the land.

On the other hand, if the plat or survey calls for monuments, a purchaser will be governed by them if their location can be definitely ascertained, though they may have decayed or been removed or destroyed. This rule is applied uniformly in ascertaining the boundaries of government surveys. So long as the monuments placed upon the earth's surface by the government surveyors can be identified, or the places where they were planted are known, they must control, no matter what the courses and distances may disclose. *Jacobs v. Moseley*, 91 Mo. 464; *Knight v. Elliot*, 57 Mo. 325; *Mayor of Liberty v. Burns*, 114 Mo. 430.

But if the corners called for are gone, and no fixed monuments are called for in the field notes, the courses and distances therein called for must prevail in establishing such corners. *Major v. Watson*, 73 Mo. 664.

There is no reason why a different rule should be applied to private surveys and town plats, and none has been applied by this court. *Dolde v. Vodicka*, 49 Mo. 100; *Kronenberger v. Hoffner*, 44 Mo. 185. See, also, 1 Jones, Real Prop. in Conveyancing, sec. 421, and 2 Devlin on Deeds, sec. 1022, and cases cited.