HERBERT A. WAGNER, Respondent, v. THE EDISON ELECTRIC ILLUMINATING COMPANY OF CARONDELET, Appellant.

St. Louis Court of Appeals, January 2, 1900.

1. Contract, Construction of; SPECIFIED SERVICES: CONSIDERATION: APPORTIONABLE CONTRACT: COMPENSATION. A deep rooted principle of common law is that when parties have entered into a contract by which the amount to be performed by one and the consideration to be paid by the other are made certain and fixed, the contract can not be apportioned. But where the services to be performed are specified and fixed, but the consideration to be paid is left to be implied by law, the contract may be apportionable, provided the nature of the contract is such that the accrual of the benefits go along and keep pace with the performance and are not dependent upon a completion of the contract in its entirety.

2. ———: ———: ———. Where benefits accrue as they did in this case as the work progresses, it may be well presumed that the parties contemplated remuneration should be paid from time to time during the progress of construction; especially may this presumption be indulged in view of the fact that the contract provided for monthly payments to the contractor on estimates to be made by respondent.

3. Construction of Contract: PRESUMPTION. In the case at bar, it is held that the contract is apportionable, and that the suit is not prematurely brought.

4. ———: INSTRUCTION. Instruction in the case at bar examined and held to properly submit the sole question of fact to the jury.

5. **Practice, Appellate:** ERRONEOUS INSTRUCTIONS. Where, on the whole record the judgment is for the right party it should be affirmed notwithstanding the giving of erroneous instructions, which in the opinion of the appellate court did not materially affect the merits or prejudice the appellant.

Appeal from the St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

REVERSED AND REMANDED, AND CAUSE CERTIFIED TO SUPREME COURT.

*O'Neil Ryan* for appellant.

(1) Respondent's contention that a judgment in this action will bar another action begs the question, which is: The contract (if one existed) being entire, and not ended, can plaintiff maintain an action thereon? In other words, if he has a cause of action it has, I submit, been brought prematurely. It has been often held that where a suit is brought on a cause of action before the same has accrued, the proceeding must be dismissed. Heard v. Ritchey, 112 Mo. 519; Mason v. Barnard et al., 36 Mo. 384-391; Brown v. Shock, 27 Mo. App. 351; Vandike v. Maddix, 23 Mo. App. 192. (2) The rule as to what constitutes an entire contract, and that an action on such a contract before it is completed is premature, is also sustained by the authorities cited under point two of appellant's main brief.

*Morton Jourdan* for respondent.

(1) In addition to authorities cited under this head in former brief, I call court's attention especially to Kerr v. Cusenbary, 60 Mo. App. 563, in which it is said, "But it is also well settled that whenever service is rendered and received, a contract of hiring or an obligation to pay will be presumed." * * * "Nor is it necessary in all cases for

the plaintiff to prove an express assent of the defendant to enable the jury to find a previous request; they may infer it from his knowledge of the plaintiff's acts or his silent acquiescence." (And cases cited). * * * Again same case: "And whether the services rendered were intended as a gratuity is a question of fact to be left to the jury." Under the rule, Linnekohl v. Winkelmeyer, 54 Mo. App. 573 and Hernan v. Co., 58 Mo. App. 485, respondent is entitled to recover, and this rule defeats suggestions "premature." Glover v. Henderson, 120 Mo. 376 and Yeates v. Ballentine, 56 Mo. 536.

BLAND, P. J.—In 1896 the municipal assembly of the city of St. Louis, passed ordinance number 18680 (known as the "Keyes" ordinance), which required electric and power companies doing business within the district bounded by the river and Twenty-second street, Wash and Spruce streets, to bury their wires under ground, and forbidding the use of poles, etc., above ground within the designated territory after December 31, 1898. The ordinance provided certain privileges to persons and corporations complying with its terms. The defendant, the Phoenix Light, Heat and Power Company; the Missouri Electric Light & Power Company, and the St. Louis Electric Light and Power Company qualified under the ordinance, and presented to the board of public improvements of the city their several plans for construction of underground conduits. These plans were located in many instances on the same streets and alleys in the district, for which reason the several companies were compelled to construct jointly, by order of the board of public improvements in the exercise of a power delegated to it by the ordinance. The above mentioned companies on April 17, 1897, entered into a single but several contract with the National Conduit Construction Company of St. Louis, and two other construction companies for the underground conduits to be used by them jointly. This

contract provided for a construction committee of four members, one to be selected from each of the four companies, to which all disputes between the said companies and the construction companies should be referred for final decision. No engineer was named in this contract for these several companies, yet the contract in numerous places refers to one, and certain powers are given him with respect to supervision and approval of the work, showing that the appointment of such an engineer was contemplated by all the parties to the contract. The conduits are roughly described in the evidence as similar to a large gun barrel with numerous circular spaces extending its entire length with the ducts of each company, varying in number according to its needs, but made inseparable from the ducts of the other companies, so that the ducts of one could not be removed without removing all; so that the surveys, plans, supervision, permits and all that appertained to the construction of the conduits was both the joint and individual undertaking of the four companies. The committee provided for in the contract was made up of E. V. Matlack, representing the defendant, A. Ross, representing the Phoenix Company, D. W. Guernsey, representing the St. Louis Company, and plaintiff, representing the Missouri Company. On April 30, 1897, the committee organized by electing Wagner chairman, and Ross secretary, and adopted rules for the conduct of its proceedings, among which was one providing that no motion could be carried unless it received three votes in the affirmative. On May 7, 1897, Mr. Ross moved that Wagner be appointed engineer to supervise the underground work as provided for in the contract of April 17, 1897. The motion was seconded by Guernsey. On vote being taken, all voted aye, except Mr. Matlack who voted no, and Wagner was declared duly appointed engineer. Mr. Wagner appointed the other gentlemen of the committee, a committee of three to outline and define the duties of the engineer. A majority and minority report was made; the

majority report was adopted by the full committee, Matlack
voting in the negative.   Briefly stated, the majority report as
adopted required the engineer to provide all plans for construc-
tion; to secure permits therefor from the board of public im-
provements, and to have general supervision over the work
provided for in the contract of April 17, 1897.   The com-
mittee in behalf of the several companies in interest then gave
to the board of public improvements the following notice:

"St. Louis, Mo., May 11, 1897.

To the Hon. Board of Public Improvements of the city of
    St. Louis, Gentlemen:

The undersigned companies have appointed Mr. Herbert
A. Wagner engineer for the construction of their conduits,
under authority of ordinance No. 18680.   You will please
deliver permits for conduits to him or his order.

"Very respectfully,

"Missouri Electric Light & Power Co.
"Edison Illuminating Co. of St. Louis,
"The Electric Light, Power & Conduit Co.,
"S. B. Pike, Secretary.

"The Phoenix Light, Heat & Power Co.,
"A. Ross, President.
"The Edison Illuminating Co. of Carondelet, .
"E. V. Matlack, Secretary.
"St. Louis Electric Light & Power Co.,
D. W. Guernsey, President."

Each block of street where it was planned to construct
the conduit was obstructed by underground gas and water
pipes, and in some instances by sewers; these it was necessary
to go over or under without disturbing them, hence great care
was required and a study of the city records as to location of
these obstructions and the preparation of maps and drawings
showing their location, depth, etc., was necessary.   All this
was done under the supervision of Wagner, and a special

preliminary plan of each block was made and furnished to each company. From these preliminary plans final plans were prepared by Wagner acceptable to all the companies, and then submitted to the board of public improvements for the purpose of getting permits for the construction of the conduit. Of this work about twenty plans were prepared for each block; to prepare them required the work of four or five draughtsmen for a year; all the measurements were taken by Wagner, or by an engineer acting under him, and a record made of them; monthly estimates of the work was made by or under his (Wagner's) supervision, and submitted to the construction committee, on which monthly payments to the contractor were made; a large number of inspectors were employed to watch the contractor; these reported to Wagner and were assigned to duty by him, and all orders to the contractor came from Wagner. An office force of clerks, draughtsmen and inspectors, and a force of under-engineers were furnished by the respective companies, but all acted as a unit and worked under the order and control of Wagner as engineer in chief. The labor was not only great, but also, as to the work of the engineer, it had to be skillfull and exact to meet the requirements of the ordinance and to leave undisturbed the existing underground obstructions. The responsibility for plans, measurements and successful construction, were all on Wagner as engineer in chief, and he supervised and directed all. The work of construction as it progressed was on the estimate and certificate of Wagner, when approved by the construction committee, paid by the respective companies *pro rata* as follows: Missouri Company seven-twelfths; Phoenix, two-twelfths; defendant, three-twelfths A short time after the formation of the construction committee, the St. Louis Company was absorbed by the Missouri Company, but Mr. Guernsey continued on the committee and acted thereon in the interest of the Missouri Company. At the time the construction committee was formed Wagner

was general superintendent and engineer of the Missouri Company and the Edison of St. Louis, receiving per month $250, and $200, respectively for his services, which salaries he continued to receive during joint construction of the underground conduit. He made no special charges against these companies for extra services as engineer in chief of joint construction. Wagner represented on the construction committee the Missouri Company, the Edison of St. Louis, and the Electric Light, Power and Conduit Company; the three latter companies were absorbed by the Missouri Company. Ross and Guernsey testified that Wagner was chosen as chief engineer for the reason that they thought he would not charge as much for his services as an engineer who had no connection with any of the companies, and that on several occasions at committee meetings Wagner stated he expected pay for his services as chief engineer of the work, and that they always understood he was to be paid. Matlack on the contrary says, that nothing was ever said about paying Wagner, until in the summer of 1897, when the Imperial Electric Company wanted to come in, the question was then discussed in reference to its just proportion of the expenses, should it be let in, but that prior to that time the committee had never agreed upon any sum to be paid to Wagner for engineering work, and that the matter had never been discussed or reported to the companies, and that at this same meeting he expressly stated that his company would not pay for such work, but would provide for its due proportion of the engineering work, and whenever the matter came up afterwards, he invariably said to Wagner, "we don't owe you anything and won't pay you anything," to which Wagner would reply, "I'll make you pay." The Phoenix Company paid Wagner $100 per month for ten months services as chief engineer of joint construction, without objection. On February 18, 1898, Wagner made a written request on appellant for payment for his services at the rate of $100 per month. The

appellant refused to pay the bill. The construction continued and Wagner continued to act as chief engineer. Some time in the latter part of May, 1898, he placed his claim in the hands of Mr. Jourdan, his attorney, for collection. On June 4, 1898, in answer to a letter addressed to him by Mr. Jourdan, in regard to the account, Mr. Ryan, attorney for the defendant, stated, to use his own language: "The defendant does not consider itself liable to Mr. Wagner for any duties he had theretofore or might thereafter discharge as engineer of conduit construction." Wagner on the trial testified that he had rendered services as engineer on joint construction in November, 1898, and that he still considered himself in defendant's employ as engineer of joint construction, and that his total claim for services as such engineer rendered appellant, prior and subsequent to the beginning of the suit, was $1,700. It was admitted on the oral argument that $100 per month for plaintiff's services was a reasonable charge against defendant, if defendant is legally bound to pay for such services. The suit was commenced on June 6, 1898. The petition is as follows:

"That on May 7, 1897, plaintiff was employed by defendant to render service to it as engineer in charge of and to supervise work in and the construction of its conduit system, and promised to pay the reasonable value of the service; that he rendered the services from May 7, 1897 to May 7, 1898; that they were reasonably worth twelve hundred dollars; that payment has been refused, and prays judgment."

The answer was a general denial. The jury returned a verdict in favor of plaintiff for $1,200. A motion for new trial proving of no avail, defendant appealed.

The court gave on behalf of respondent the following instructions, to all of which appellant objected, and excepted.

"1. If the jury find that defendant through its secretary Mr. Matlack, requested the plaintiff to perform the services

in issue, and that plaintiff performed said services, then the verdict will be for plaintiff."

"2.   If the defendant's officers saw and knew that plaintiff was rendering the services in issue and that plaintiff expected pay therefor, then the verdict will be for plaintiff."

"3.   Even though you find no employment or request to perform said service by defendant, yet if plaintiff rendered said services and the defendant accepted the results of his labor, then the verdict should be for the plaintiff."

"4.   The defendant is a corporation and hence can act only through its duly elected and acting officers, hence any act of Mr. Matlack, the secretary, or Mr. Scott, the president, with reference to the employment of plaintiff, if you find there was such employment;

"Or, with reference to permitting plaintiff to do the work expecting payment therefor;

"Or, the acceptance of the results of the labor of plaintiff, if labor you find he performed, was the act of and bound the defendant."

Appellant, at the close of plaintiff's case, demurred to the evidence, which was overruled; to this ruling it duly objected and excepted at the time.   There are a number of exceptions to the admission and rejection of testimony saved by appellant during the progress of the trial.   An examination of these fails to disclose any material error in the rulings of the court on questions of evidence, and we will pass them over without further notice.

The clause of the contract providing for the construction committee reads as follows: "To prevent all disputes, it is agreed by and between the parties to this contract, that a construction committee composed of representatives, one to be selected by each of the companies, shall decide all questions which may arise relative to the execution of the contract on the part of the contractors, and its decisions shall be final and conclusive."   All through the contract the en-

gineer of the contracting companies is mentioned; it is provided that the work of construction shall be done under his supervision, and must be accepted by him; he is authorized to supervise construction; to inspect and test. material to be used in construction; he is required to locate and designate manholes, and all disputes between the contractor and the engineer are referred to the construction committee for final decision. In short, the supervision and execution of the contract on their part is delegated by the contracting companies to the committee and the engineer. The personal of the engineer is not named in the contract, nor did the contracting companies after its execution at any time undertake to appoint one, but acquiesced in the appointment of Wagner by the committee. It may, therefore, be said, that even if the power to appoint an engineer was not expressly or impliedly conferred on the committee, yet its appointment of him was ratified and approved by all the companies, as shown by the notice of his appointment served on the board of public improvements May 11, 1897. The construction committee was the agent of all the companies—not each member thereof the agent of the company selecting him as a committeeman—and the powers given the committee under the contract were such as to authorize the appointment of an engineer, or to do anything that might be done by the contracting parties acting jointly, neccessary to be done to secure the construction of the conduit according to the terms and requirements of the contract. Wagner's employment therefore by the defendant is not an open question, in view of all the evidence in the record. It is admitted that his services to the defendant were worth $100 per month, but the contention of appellant is that he should not be paid for his services, because, first, it was not expressly agreed when he was employed that he should receive compensation, and second, because all the companies furnished other engineers, inspectors, clerks and messengers from their general force of

employees; for those services no extra charges were made or compensations claimed; and third, because Wagner at the time he was performing services for all the companies was receiving salaries as the superintendent and engineer of two of the companies, against whom he made no extra charges for his special work as chief engineer of construction. The evidence of Wagner's intention to charge for his service when appointed, is somewhat conflicting, but this question was squarely submitted to the jury by the third instruction given on the part of appellant, and the jury found against the appellant on this issue of fact. There is evidence tending to support that finding, hence the question is not open for discussion by us on appeal. That Wagner was receiving salary from other companies, against which he made no extra charge, is no reason why appellant should receive the benefits of his skill and labor for nothing; nor does the fact that employees of the several companies performed services under Wagner as chief engineer, for which no extra charges were made, stand in the way of Wagner's recovery for his services. That he was employed; that he earned what he had sued for, and that the appellant justly owes him, it seems to us in view of all the evidence and the verdict rendered by the jury, are questions about which there is no longer reason for controversy. Some of the instructions given are not hypothecated on the evidence, and required the jury to find some facts not necessary to be found to entitle respondent to recover, and were therefore erroneous, but not prejudicial to appellant. The material question in the case, was the right and purpose of Wagner to charge for his services. This was properly submitted by instructions given for appellant and we find no reversible error in the giving of instructions.

Appellant contends that the suit was prematurely brought. Wagner was employed by the committee for joint construction; his employment necessarily covered the entire construction, which was not completed until some time after

the suit was brought; his services were therefore not at an end when he commenced his suit, unless the letter of appellant's attorney of June 4 terminated his employment in so far as the appellant was a party thereto. The peculiar relation of these several companies to each other makes this question a difficult one. They were not partners, but joint contractors, with a several but not joint liability for expense and charges for the construction of the conduit under the joint contract. Appellant could not withdraw from the joint undertaking, nor revoke the agency (the construction committee), which it had agreed to create, and had helped to raise. It might have withdrawn its appointee on this committee and persuaded the other companies to do the same thing and make new appointments, but it could not destroy the committee, nor revoke any of its delegated powers, nor could it repudiate its actions, when within the scope of its authority. It might have persuaded the committee to discharge Wagner, but it could not force it to do so nor could it discharge him from the employment he had received from the committee, nor under the circumstances refuse to accept the benefit of his services. The position of appellant was somewhat anomalous, but it put itself in that position by its own contract, and we hold that the letter of June 4 did not discharge Wagner, and that he continued the servant and employee of appellant until the completion of the work of construction. The time for which Wagner was employed was not designated in the motion appointing him, but the circumstances of the appointment, the understanding of the members of the committee, and his own understanding was that it was for the whole period of construction. There was no agreement to pay in instalments, or to pay at any particular time, or to pay a stipulated sum. The contract being for the entire construction, and no agreement as to time or amount of payment, was anything due when the suit was brought? In other words, is the contract apportionable? If not, then

the suit was prematurely brought.   Hill v. Mining Company, 119 Mo. 9; Bersch v. Sander, 37 Mo. 104; Atkins Grocery Company v. Tagart, 60 Mo. App. 389.   A deep-rooted principle of the common law is that where parties have entered into a contract by which the amount to be performed by one and the consideration to be paid by the other are made certain and fixed, the contract can not be apportioned.   But where the services to be performed are specified and fixed, but the consideration to be paid is left to be implied by law, the contract may be apportionable, provided the nature of the contract is such that the accrual of the benefits go along and keep pace with performance and are not dependent upon a completion of the contract in its entirety.   Note to Cutter v. Powell, 2 Smith's Leading Cas. 1228; Sickels v. Pattison, 14 Wend. 257; Wade v. Haycock, 25 Penn. St. 382.   Where benefits accrue, as they did in this case, as the work progressed it may be well presumed that the parties contemplated remuneration should be paid from time to time during the progress of construction, especially may we indulge this presumption here in view of the fact that the contract provided for monthly payments to the contractor on estimates to be made by Wagner and approved by the committee.   Indulging this presumption we hold that the contract is apportionable, and that the suit was not prematurely brought.

Should the judgment be reversed on account of the error in instructions given for respondent?   In view of all the evidence we think not.   The sole question of fact about which there was any controversy at the trial, was whether or not Wagner intended to charge for his services, when he was appointed chief engineer of construction by the committee.   As hereinbefore stated, that issue of fact was properly submitted to the jury by appellant's third instruction, which reads as follows:   "The court instructs the jury that if they believe from all the facts and circumstances in evidence that the plaintiff when he was appointed by the construction com-

mittee engineer for joint construction, did not intend to charge for his services, that he could not thereafter change his mind and charge therefor, even though you believe that the services were beneficial to defendant." None of the instructions given for the respondent contradict or are opposed to this instruction. The jury was therefore bound to find that Wagner intended to charge appellant for his services at the very time of his appointment, before they were authorized under the evidence and instructions of the court, to return a verdict in his favor. The evidence on all the other issues of fact to entitle him to recover was practically all on the side of Wagner, and there is no controversy as to them. On this showing from the whole record it is our duty to affirm the judgment, notwithstanding the giving of erroneous instructions, which in our opinion did not materially affect the merits or prejudice the appellant. Rev. Stat. 1889, sec. 2303; Jones v. Poundstone, 102 Mo. 240; Homuth v. Street Ry., 129 Mo. 629; Sullivan v. Railroad, 133 Mo. 1; Whitehead v. Atchison, 136 Mo. 485; Scotland County v. O'Connel, 23 Mo. App. 165; Newberger v. Friede, 23 Mo. App. 631; Noble v. Blount, 77 Mo. 235; Browne v. Ins. Co., 68 Mo. 133; Rowell v. St. Louis, 50 Mo. 92; Barr v. Armstrong, 56 Mo. 577; Nelson v. Foster, 66 Mo. 381; Greene v. Railroad, 60 Mo. 405. The judgment, with the concurrence of Judge *Bond*, is affirmed. Judge *Biggs* dissents, and is of the opinion that the second instruction given for the respondent is in conflict with Kinner v. Tschirpe, 54 Mo. App. 575, and that the third one is in conflict with the following cases: Allen v. College, 41 Mo. 302; Whaley v. Peak, 49 Mo. 80; Painter v. Ritchey, 43 Mo. App. 111; Carter v. Phillips, 49 Mo. App. 319; Hiemenz v. Goerger, 51 Mo. App. 586, and Hartmett v. Christopher, 61 Mo. App. 64, and that the error was prejudicial to the appellant, and that the judgment should be reversed and the cause remanded, and requests that the cause be certified to the supreme court for final determination. It is so ordered.