FRANKLIN WHALEY AND HENRY C. WHALEY, EXECUTORS OF WM. WHALEY, Plaintiffs in Error, *v.* THOMAS F. PEAK, Defendant in Error.

1. *Contract—Board—Agreement meant for gratuity cannot afterward be made a charge— Questions, what, for the jury.*—Where a testator induced one to come and reside with him as one of his own family, with no intention of charging him board, and such was the understanding between the parties at the time, his executors will not be permitted to recover; for that which was originally intended as a gratuity cannot be subsequently turned into a charge. And whether there was any implied contract on which to found an action, or whether the board was intended as a gratuity, are questions of fact for the jury upon the evidence, after taking into consideration the circumstances in life of the parties, the degree of relationship, and all the other facts which may affect the case.

*Error to Marion Circuit Court.*

*Dryden & Dryden*, with *Lipscomb & Hageman*, for plaintiffs in error.

*Anderson* and *Boulware*, for defendant in error.

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs, as executors of William Whaley, deceased, brought their action against defendant for the reasonable value of board and lodging alleged to have been furnished defendant and his child by the testator in his lifetime. The answer of defendant denied all indebtedness, and averred in substance that the defendant and his wife and child, during the time for which board was claimed, were at the house of William Whaley as members of his family and household, and that they were so inmates and members at Whaley's solicitation and request. The answer then further sets out in detail the circumstances under which defendant went to reside with the testator, Whaley, and set up a counter-claim to the plaintiffs' demand. So far as the counter-claim is concerned it need not be particularly noticed, as it was in effect withdrawn. The important inquiry is, was there any implied promise that would support an action against the defendant? The

trial was had before a jury, and under the evidence and instructions the verdict and judgment were for the defendant. The facts are, concisely, that the wife of the defendant was the daughter of Mrs. Whaley and stepdaughter of the testator; that she had, after the intermarriage of her mother and the testator, been brought up in the family and educated and treated as the other children of the testator's family, till her marriage with the defendant, when she and her husband moved off and went to keeping house. The testator's children all left him with the exception of one son, and he resided on a farm and attended to it himself. Whaley and his wife were both old and infirm, and Mrs. Whaley was afflicted and unable to attend to the duties of the household; and she was very anxious that her daughter, the defendant's wife, should remove to their house to live, that she might have her society and assistance. With this view Whaley and wife addressed a letter to the defendant's wife, importuning her and her husband to break up housekeeping and take up their residence with them. The defendant opposed the proposition, and was unwilling to give up his business, in which he was realizing a considerable profit. The daughter, however, further inquired as to the terms and manner in which it was expected they would come and reside with the testator and wife. In response she received a letter addressed to her and her husband, written by the testator, Whaley, and signed by him and his wife, in which it is said: "Dear Children—Well, now, Thomas and Hattie, in a few words I will tell you how I expect you to stay with us for two years, if you can be satisfied to do so. I will ask you to do what you can to assist us along with our labor, enough at least to pay moderate board, whenever your health and circumstances will allow you to do so, but do not wish you to think of making anything like regular days' or weeks' work. You, Thomas, need rest from your business, at least one year, and you will find it profitable in more ways than one. Moderate labor on a farm, at what you can perform without much fatigue, at short intervals, would, I suppose, benefit you both in body and mind. We old folks must do something, or have something done, in order to keep us while we are in this world—try and keep a home, and have our home;

6—VOL. XLIX.

keep us.  To labor constantly now we cannot, but we can get others more able than ourselves to help us.  I would like to have you come down, if you are willing to try the change."

In accordance with this proposition, the defendant and his wife broke up housekeeping; he abandoned his business, and they took up their residence in the family of Whaley, where they continued until Whaley's death.  The defendant's wife was continually engaged in assisting her weak and enfeebled mother in the management of the household duties, sometimes doing all the work, and even the cooking, when no servant could be obtained.  The defendant was part of the time absent, teaching school; but at other times he was engaged at work, and assisted in the management of the farm.  Everything seems to have gone along smoothly, and there was no indication of dissatisfaction, or anything exhibited to show that Whaley, the testator, ever intended to charge the defendant with board, except the declaration that the executor says the testator made on his death-bed.

Mr. Peak, the wife of the defendant, was introduced as a witness, and testified as to receiving the two letters, and stated that in reply to the first letter, she wrote to her father, Whaley, asking for a further statement as to how he expected them to come; and in answer to this letter she received the second letter alluded to above; that the defendant submitted the whole matter to her for her determination, and she concluded to go, and that they accordingly did go.  To this statement of Mrs. Peak the plaintiffs objected, but the objection was overruled.

I see no good or valid objection to the competency of the witness.  It is sufficiently shown that she was acting as agent for her husband.  The letters were directed by the testator to her, she was the person who managed the whole affair; and, moreover, the letters were directly drawn out and their contents called for by the course of examination pursued by the plaintiffs.

There is nothing in the objection to the competency of the defendant as a witness.  He did not pretend to say anything in regard to any conversation, understanding or agreement had with the testator in his lifetime.  His whole testimony was in reference to a conversation had with the plaintiffs respecting the

merits of the claim, and they testified concerning the same matter. The declaration of the testator when he was about to die, as alleged by the executor, that the defendant should be charged with board, but that his wife should not, really amounts to nothing, and cannot in anywise change or alter the respective rights of the parties. If Whaley, the testator, induced the defendant to come and reside with him as one of his family, with no intention of charging him board, and such was the understanding between the parties at the time, his executors will not be permitted to recover, for that which was originally intended as a gratuity can not be subsequently turned into a charge. (Allen v. Richmond College, 41 Mo. 309.) And whether there was any implied contract so as to enable the plaintiffs to maintain their action, or whether the board was intended as a gratuity, are questions of fact for the jury.

In cases of this kind no absolute rule of law can be laid down. Whether there was an implied contract for compensation, or whether it was a mere gratuity, are questions to be determined by the jury upon the evidence, after taking into consideration the circumstances in life of the parties, the degree of relationship, and all the other facts which may affect the case. (Smith v. Myers, 19 Mo. 433; Guenther v. Berkicht, 22 Mo. 439; Hart v. Hart, 41 Mo. 441.) The court, at the request of the plaintiffs, instructed the jury: "That although the jury may find that the wife of the defendant Peak was the stepdaughter of William Whaley, yet if they believe from the testimony that said William furnished defendant and his children with food and lodging, as charged for in plaintiffs' petition and accounts, and that where the same was so furnished it was the expectation of, and understanding between, the parties that said food and lodging should be paid for, the finding of the jury should be for the reasonable value of such food and lodging, and six per cent. thereon from the time this suit was established." With this instruction before the jury, they of course must have found that there was no expectation or understanding that the defendant was to pay anything. There were many instructions given for the defendant which it is unnecessary to particularly notice. The controlling and prominent

idea expressed in them was that if the defendant was received in Whaley's house as a member of his family, and treated as such, then he was not liable for the demands in the plaintiffs' action. These instructions, in connection with the one given for the plaintiffs, submitted the law fairly to the jury. With the result we are content. We see no error in the record.

Let the judgment be affirmed. The other judges concur.