Jones *et al., Appellants*, v. Poundstone *et al.*

1. **Mining Lots : corners : monuments.** Where mining lots are surveyed and laid off and the corners are marked by stakes and possession taken by the purchasers in accordance therewith, such stakes will determine the corners and will not be changed by subsequent surveys.

2. ——— : ——— : ———. Such stakes are monuments and will control courses and distances.

*Appeal from Jasper Circuit Court.*—Hon. M. G. McGregor, Judge.

Affirmed.

*Phelps & Brown* and *E. C. Devore* for appellants.

(1) The court erred in permitting the defendants to ask the witnesses as to the effect of the lines of the lots being changed, as plaintiffs seek to do by the Miles survey. (2) So it was error to inquire as to the lines and corners of lots on the company's lands as recognized by the miners and the company. The lines are not claimed to be ancient, and the evidence is not admissible on the ground of reputation. *Shuttle v. Thompson*, 16 Wall. 151. (3) The court erred in refusing to give appellants' instructions, numbered 3, 4 and 9. The lots as actually staked off in accordance with the plat control. *Hoffman v. Clark*, 5 W. Rep. 747; *Pike v. Dike*, 2 Me. 23; *Thomas v. Patten*, 13 Md. 329; *Heaton v. Hodges*, 14 Me. 66. (4) The court erred in giving respondents' instructions, numbered 5, 6 and 7.

*Thomas & Hackney* also for appellants.

(1) The testimony as to the recognition by the miners and company of the gas-pipe line was incompetent. *May v. Baskins*, 20 Miss. 428; *Corning v. Troy*, 44 N. Y. 577. (2) The appellants having, prior to the lease of lot 12 to respondents, been put into possession of lot 13, with boundaries as fixed and defined by the plat of the Loyd survey, their constructive possession would extend to the true line. R. S. 1879, sec. 2449; *Kincaid v. Logue*, 7 Mo. 166; *McCartney's Adm'r v. Alderson*, 45 Mo. 35; *Powell v. Davis*, 54 Mo. 315; *Turner v. Baker*, 64 Mo. 245; *Griffin v. Schwenderman*, 27 Mo. 412; *Schultz v. Lindell*, 30 Mo. 310. (3) And the company could not, by its understanding of the lines arbitrarily change the boundaries of appellants' lot. *Pike v. Dike*, 2 Maine, 23; *Heaton v. Hodges*, 14 Maine, 66; Wood's Landlord & Tenant, sec. 538, p. 915. (4) Instruction, numbered 9, asked by appellants,

properly declares the law, and the court erred in withdrawing .the same and announcing to the jury that they should disregard it, after the close of the argument in the case.  " If two adjoining proprietors are divided by a line which they suppose to be the true one, each claiming only to the true line, wherever it may be, they are not bound by such supposed line, but must conform to the true one when ascertained."  *Kincaid v. Dormey,* 51 Mo. 552; s. c., 47 Mo. 337; *Knowlton v. Smith,* 36 Mo. 507; *St. Louis University v. McCune,* 28 Mo. 485 ; *Thomas v. Babb,* 45 Mo. 384 ; *Tamm v. Kellogg,* 49 Mo. 118 ; *Hamilton v. West,* 63 Mo. 93 ; *Lemmon v. Hartsook,* 80 Mo. 13

*T. B. Haughawout* for respondents.

( 1 )   The plaintiffs were bound by the line between lots 12 and 13 known as the "gas-pipe line" and recognized by the company as the true line between said lots, and the court did not err in admitting evidence as to it.  (2)  A recognized line must be taken as the true line in an action of unlawful detainer, and cannot be changed by a subsequent survey.   But if changed at all can only be done by a proceeding in a court of competent jurisdiction to correct the line.   *Taylor v. Zepp,* 14 Mo. 486 ; *Blair v. Smith,* 16 Mo. 273 ; *Delde v. Vodiclsa,* 49 Mo. 98; *Mayers v. Rice,* 57 Mo. 398; *Lindell v. McLaughlin,* 30 Mo. 28.  (3)  The plaintiffs were simply on said lot 12 under a license from the company to search and dig for lead ore and other minerals, and are bound by the lines pointed out and recognized by the company, and surveyor Miles had no authority whatever to attempt to change the lines from the line recognized by the company, without its consent.  (4) Plaintiffs seek to recover for the value of the minerals taken from the disputed strip by the defendants when the license to mine, under which they were working, expressly provides that the company shall at all times

retain the right of property in all minerals taken out of
said mines.   This is contrary to the opinion of this
court rendered in the following cases :  *Longfore v.
Mine LaMotte*, 54 Mo. 428 ; *Boone v. Stoner*, 66 Mo. 430 ;
*Cheynowitch v. Smelting Co.*, 74 Mo. 173.   (5)   The
company under the mining license introduced in evi-
dence are always presumed to be in possession, and the
defendants holding under said license to mine can only
hold at the sufferance of the company, and can only
mine such portions of the company's ground as the
company recognizes or licenses them to mine.   *Cheyno-
witch v. Smelting Co., supra.*

BLACK, J.—This is an action of forcible entry and
detainer, instituted before a justice of the peace, the
damages being laid at $8,000.   The charge is that in
June, 1885, defendants wrongfully entered upon and
took possession of lot 13 of the South Carterville Min-
ing & Smelting Company mining lands.   The contro-
versy turns upon the true location of the line between
lots 12 and 13.   Lot 12 is west of 13.

The mining company as owner of eighty acres of
land laid off a town on the north forty, and laid off the
south forty into mining lots which are two hundred feet
square.   Parties desiring to mine for lead and zinc are
required to register with the company for the particular
lot, that is to say, they must sign certain rules which
constitute the mining lease or license.   The company
has a map hung up in its office, called the Loyd map,
upon which the mining lots are traced and numbered.

The plaintiffs, at and prior to the date of the alleged
wrongful entry, were in possession of lot 13 under a
lease from Burch and others who had registered with
the company for that lot ; and the defendants were and
for several years had been in possession of lot 12, hold-
ing under a lease from the company.   Defendants, in
drifting out from their shaft towards the east line of
their lot, discovered and took out a large body of ore,

and the plaintiffs contend that this ore was taken from the west side of their lot.

The Loyd map which was used in evidence is not in the record, but enough appears to show that it was made when the mining lots were first surveyed and laid off in 1875, and is the map and the only one used by the company in leasing lots. Mr. Loyd in his evidence says: "My plat of mining lots furnished company shows the west line of the mining lots to be same as west line of Webb street in the town, and is not correct, because of showing the west line of the forty to be the west line of the town."

Loyd, in making the original survey and the map thereof, intended to include the whole of the forty acres, but in point of fact he omitted from his survey and map a strip of land twenty-five feet in width along the west side of the mining lands, which strip has since been laid off into fractional lots. After the present controversy had arisen Mr. Miles made a survey and plat, but he makes the west line of his survey and plat coincide with the true west line of the company's land, and hence he throws the west line of lot 13 over on lot 12, as the company supposed that lot to be located. His survey gives to plaintiffs the land from which the ore was taken. Indeed this survey of Miles moves to the west the north and south lines of all of the mining lots.

The evidence of the president of the company and that of many other witnesses shows that stakes were placed at the corners of all of the lots when the land was first laid off, and numbers were put on the stakes showing the numbers of the different lots, and that the miners took possession according to the stakes. Guided by these stakes the defendants did not encroach upon plaintiffs' lot.

The principle of law is well established that monuments must control courses and distances. These stakes originally planted by Loyd are monuments, and they determine the true corners of the mining lots. These

VOL. 102, OCTOBER TERM, 1890.        245

The Huse & Loomis Ice & Trans. Co. v. Heinze.

lots were marked off on the surface of the land, and the lines thus fixed do not change with every new survey. Subsequent surveys will aid in finding lost corners, but where, as here, the old established corners are well known they must control.

From the evidence preserved in this record there can be no doubt but the defendants kept within the lines of their lot as it was first laid out and staked off. The judgment is so manifestly for the right party that it should be affirmed, though there may be error in some of the instructions, and though some illegal evidence may have crept into the case. Affirmed. All concur.