## WAGNER v. EDISON ELECTRIC ILLUMINATING COMPANY, Appellant.

### In Banc, July 3, 1903.

1. **Implied Contract to Pay for Services.** An engineer of one corporation who is receiving compensation for his services from his own company, may, in a *quantum meruit*, recover the reasonable value of necessary services rendered another company engaged with his company in the construction of a joint conduit, when such services are performed in pursuance to an agreement between the two companies, under such circumstances as to raise a fair presumption that the parties intended or understood that they were to be paid for or ought to have so intended or understood.

2. ————: QUANTUM MERUIT: JOINT CONDUITS. In compliance with a city ordinance requiring electric light companies to put their wires under ground, four companies jointly presented their plans to the city authorities, and as these plans provided, in some instances, for underground wires for all on the same streets, the companies were required to construct joint conduits therein, and thereupon entered into contract with construction companies for the construction of joint conduits, in which it was provided that there should be a committee of four members, one to be selected by each company, to which all disputes between the light companies and the construction companies should be referred. This contract provided for an unnamed engineer to supervise the work, and in pursuance to a rule adopted by the organized committee requiring the vote of three of the four members to elect, plaintiff was chosen such engineer, and thereupon all the companies so notified the city authorities. But neither the contract nor the rules of the committee said anything about the compensation the engineer should receive. But he went ahead and superintended the entire construction, the benefits to defendant accruing as the work progressed, and monthly payments were made to the contractors, as the contract provided, on estimates made by him and approved by the committee, and before the work was completed, although he was drawing a salary from his own company as their engineer, on the refusal of defendant to pay for his services as the supervisor of the joint conduit construction, he brought suit on a *quantum meruit* for the reasonable value thereof. *Held,* that the court properly left it to the jury to determine whether the services were rendered under such circumstances as implied a promise to pay therefor by defendant, and the instructions should have submitted the case on that theory.

3. ————: ————: ————: APPORTIONMENT: PREMATURE ACTION. Where the services to be performed are specified and fixed, but the consideration to be paid is left to be implied by law, the contract, even in a *quantum meruit*, may be apportionable, provided the nature of the contract is such that the benefits from the services go along and keep pace with the performance thereof and are not dependent upon a completion of the contract in its entirety; and, hence, in such case, the plaintiff need not wait until the entire work covered by the contract is completed to bring his action for compensation, but he may bring it at any time for the reasonable value of the services then rendered.

*Held,* by GANTT, J., in separate opinion, in which ROBINSON, C. J., concurs, that plaintiff in this case could not apportion his contract and sue for his services as for monthly payments up to the time of commencing the action, since the services to be rendered under the contract were to superintend the entire construction of the joint conduit, and there being no specific agreement to pay in

installments, or to pay at all, the compensation must be one sum for the whole work, and necessarily no action will lie until the work is completed.

4. ——: ——: INSTRUCTIONS. Under the contract entered into by defendant and three other companies for the construction of a joint underground conduit for their electric wires, the plaintiff was chosen the engineer to supervise the work, and nothing being said as to his compensation, defendant notified him, on being informed of his demand to be paid, that it did not owe him anything, but could not discharge him because of the contract with the other companies in pursuance to which he was chosen to supervise the work. The instructions given authorized the jury to return a verdict for services which the defendant had no option to refuse, for which the defendant had never agreed to pay, for which plaintiff may not have intended to charge, and for which the defendant may have understood no compensation was to be made. *Held*, to be erroneous within themselves, nor was their error cured by an instruction for defendant which required the jury to find that plaintiff did intend to charge for his services, for that was not the only issue in the case. In order that plaintiff may recover, it is necessary not only that the jury find that plaintiff intended to charge for his services, but that under all the facts and circumstances both he and defendant understood or ought to have understood that compensation for his services was to be made.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED AND REMANDED.

*Judson & Green* for appellant.

(1) The court erred in submitting this case to the jury. (a) There was no express employment of plaintiff except by the construction committee (if that was a valid appointment), no evidence of any express promise to pay for services, and no evidence from which a jury should have been allowed to infer or conjecture a promise by defendant to pay plaintiff for such services as he rendered as engineer of joint construction. Allen's Administrator v. College, etc., 41 Mo. 301; Kinner v. Tschirpe, 54 Mo. App. 579; Bittrick v. Gilmore, 53 Mo. App. 56; Painter v. Ritchey, 43 Mo. App. 113; Lippman v. Tittman, 31 Mo. App. 74; Taylor v. Laird,

25 L. J. E. 332. . (b) There was no evidence tending to show that defendant knew plaintiff intended to charge it for his services as engineer of joint construction until the matter of the Imperial Company came before the committee, and plaintiff admits that then defendant at once repudiated such a charge and notified plaintiff it would not pay him for such services. Under such circumstances the law will not imply a promise of compensation. Painter v. Ritchey, 43 Mo. App. 113; Hewit v. Doherty, 25 Mo. App. 326; Knapp, Stout & Co. v. Standley, 45 Mo. App. 264; Pricket v. Badger, 37 Eng. Law & Eq. 428. (c) Defendant could not discharge Mr. Wagner when it learned that he intended to charge for his services, and the circumstances were such as to compel it to accept the benefits of those services, so far as they affected defendant. The law is that there can be no implied promise to pay for services if defendant has not the power to accept or refuse the services. Taylor v. Laird, 25 L. J. E. 329; Zottman v. San Francisco, 20 Cal. 96; Davis v. School Dist. No. 2, 24 Me. 349. (d) Defendant's acceptance of the benefits of plaintiff's services, in no way influenced plaintiff in reference to his work as supervising engineer, and therefore no promise of compensation can be implied from such acceptance. Richard v. Warren County, 31 Iowa 381; Zottman v. San Francisco, 20 Cal. 96. (2) If plaintiff had a contract with defendant whereby he became its employee (conceding that for the purpose of this point only), it was, according to his testimony, based on the records of the committee. It was an employment as engineer for joint construction, and covered the entire period necessary for that work, and as that work was not finished until the fall of 1898 plaintiff could not split his cause of action. Hence this suit is premature. Hill v. Mining Co., 119 Mo. 27; Bersch v. Sander, 37 Mo. App. 106; Alkire Grocery Co. v. Taggart, 60 Mo. App. 392; Lawson on Contracts, sec. 489; Real v. Moone, 19 Johns. 340; Jennings v. Camp, 13

Johns. 94; McMillan v. Van der Lip, 12 Johns. 165; Lantry v. Parks, 8 Cow. 63; Nickels v. Pattison, 14 Wend. 259; Stephens v. Beard, 4 Wend. 606; Krumb v. Campbell, 102 Cal. 370; Cox v. Railroad, 44 Cal. 18; Larkin v. Buck, 11 Ohio St. 561; Coburn v. City, 38 Conn. 290; Wright v. Turner, 1 Stew. (Ala.) 29. (3) But conceding for the argument that there was sufficient evidence to authorize the submission of the case to the jury, the court erred in the instructions given for plaintiff. (a) The second instruction given for plaintiff requires a verdict for plaintiff if defendant's officers knew he was rendering services and expected pay. This, in the circumstances disclosed by the evidence, was not the law. Bank v. Aull, 80 Mo. 199; Kinner v. Tschirpe, 54 Mo. App. 575; Bittrick v. Gilmore, 53 Mo. App. 53; Lippman v. Tittman, 31 Mo. App. 69; Folger v. Heidel, 60 Mo. 284; Hart v. Hart's Admr., 41 Mo. 441. This second instruction is also in direct conflict with the first instruction given for defendant and renders the entire charge inconsistent, to the evident confusion of the jury and prejudice of defendant. State v. Herrell, 97 Mo. 105; State v. Brumley, 53 Mo. App. 126; McNichols v. Nelson, 45 Mo. App. 446; Kinner v. Tschirpe, 54 Mo. App. 575; James v. Railroad, 107 Mo. 480; Jones v. Talbot, 4 Mo. 297; Maskowitz v. Kansas City, 125 Mo. 485. (b) The third instruction given for plaintiff was erroneous in making plaintiff's right to recover depend only on the acceptance by defendant of the results of his labor although there was no employment or request to perform the services. Allen v. College, 41 Mo. 302; Whaley v. Peak, 49 Mo. 80; Painter v. Richey, 43 Mo. App. 311; Carter v. Phillips, 49 Mo. App. 319; Hiemenz v. Goerger, 51 Mo. App. 586; Harywell v. Christopher, 61 Mo. App. 64.

*Morton Jourdan* for respondent.

In lieu of statement and brief, counsel for respondent submits the exhaustive statement and able opinion

of the Hon. C. C. BLAND, one of the judges of the St. Louis Court of Appeals, rendered in this case while it was pending in that court.

BRACE, J.—This case is certified here from the St. Louis Court of Appeals, upon the dissent of one of the judges of that court, to the decision of a majority thereof, in an opinion by BLAND, P. J., reported in 82 Mo. App. 287. A copy of that opinion, affirming the judgment of the circuit court in favor of the plaintiff, without additional argument or brief, is filed by his counsel in support of that judgment, and may be taken for the statement of the case. It is as follows:

"In 1896 the Municipal Assembly of the city of St. Louis passed Ordinance No. 18680 (known as the 'Keyes' ordinance), which required electric light and power companies doing business within the district bounded by the river and Twenty-second street, Wash and Spruce streets, to bury their wires under ground, and forbidding the use of poles, etc., above ground within the designated territory after December 31, 1898. The ordinance provided certain privileges to persons and corporations complying with its terms. The defendant, the Phoenix Light, Heat and Power Company, the Missouri Electric Light & Power Company, and the St. Louis Electric Light and Power Company qualified under the ordinance, and presented to the Board of Public Improvements of the city their several plans for construction of underground conduits. These plans were located in many instances on the same streets and alleys in the district, for which the several companies were compelled to construct jointly, by order of the Board of Public Improvements in the exercise of a power delegated to it by the ordinance. The above-mentioned companies on April 17, 1897, entered into a single but several contract with the National Conduit Construction Company of St. Louis and two other con-

Vol 177 mo—4

struction companies, for the underground conduits to be used by them jointly. This contract provided for a construction committee of four members, one to be selected from each of the four companies, to which all disputes between the said companies and the construction companies should be referred for final decision. No engineer was named in this contract for these several companies, yet the contract in numerous places refers to one, and certain powers are given him with respect to supervision and approval of the work, showing that the appointment of such an engineer was contemplated by all the parties to the contract. The conduits are roughly described in the evidence as similar to a large gun barrel with numerous circular spaces extending its entire length with the ducts of each company, varying in number according to its needs, but made inseparable from the ducts of the other companies, so that the ducts of one could not be removed without removing all; so that the surveys, plans, supervision permits and all that appertained to the construction of the conduits were both the joint and individual undertaking of the four companies. The committee provided for in the contract was made up of E. V. Matlack, representing the defendant; A. Ross, representing the Phoenix Company; D. W. Guernsey, representing the St. Louis Company; and plaintiff, representing the Missouri Company. On April 30, 1897, the committee organized by electing Wagner chairman, and Ross secretary, and adopted rules for the conduct of its proceedings, among which was one providing that no motion could be carried unless it received three votes in the affirmative. On May 7, 1897, Mr. Ross moved that Wagner be appointed engineer to supervise the underground work as provided for in the contract of April 17, 1897. The motion was seconded by Guernsey. On vote being taken, all voted aye, except Mr. Matlack who voted no, and Wagner was declared duly appointed engineer. Mr. Wagner appointed the other gentlemen of the com-

mittee, a committee of three to outline and define the duties of the engineer. A majority and minority report was made; the majority report was adopted by the full committee, Matlack voting in the negative. Briefly stated, the majority report as adopted required the engineer to provide all plans for construction; to secure permits therefor from the Board of Public Improvements, and to have general supervision over the work provided for in the contract of April 17, 1897. The committee in behalf of the several companies in interest then gave to the Board of Public Improvements the following notice:

" 'St. Louis, Mo., May 11, 1897.

" 'To the Hon. Board of Public Improvements of the city of St. Louis:

" 'Gentlemen: The undersigned companies have appointed Mr. Herbert A. Wagner engineer for the construction of their conduits, under authority of Ordinance No. 18680. You will please deliver permits for conduits to him or his order.

" 'Very respectfully,

" 'Missouri Electric Light & Power Co. &

" 'Edison Illuminating Co. of St. Louis,

" 'The Electric Light, Power & Conduit Co.,

"S. B. Pike, Secretary.

" 'The Phoenix Light, Heat & Power Co.,

" 'A. Ross, President.

" 'The Edison Illuminating Co. of Carondelet,

" 'E. V. Matlack, Secretary.

" 'St. Louis Electric Light & Power Co.,

" 'D. W. Geurnsey, President.'

"Each block of street where it was planned to construct the conduit was obstructed by underground gas and water pipes, and in some instances by sewers; these it was necessary to go over or under without disturbing them, hence great care was required and a study of the city records as to location of these obstructions and the preparation of maps and drawings show-

ing their location, depth, etc., was necessary. All this was done under the supervision of Wagner, and a special preliminary plan of each block was made and furnished to each company. From these preliminary plans final plans were prepared by Wagner acceptable to all the companies, and then submitted to the Board of Public Improvements for the purposes of getting permits for the construction of the conduit. Of this work about twenty plans were prepared for each block; to prepare them required the work of four or five draughtsmen for a year; all the measurements were taken by Wagner, or by an engineer acting under him, and a record made of them; monthly estimates of the work was made by or under his [Wagner's] supervision, and submitted to the construction committee, on which monthly payments to the contractor were made; a large number of inspectors were employed to watch the contractor; these reported to Wagner and were assigned to duty by him, and all orders to the contractor came from Wagner. An office force of clerks, draughtsmen and inspectors, and a force of under-engineers were furnished by the respective companies, but all acted as a unit, and worked under the order and control of Wagner as engineer in chief. The labor was not only great, but also, as to the work of the engineer, it had to be skillful and exact to meet the requirements of the ordinance and to leave undisturbed the existing underground obstructions. The responsibility for plans, measurements and successful construction, were all on Wagner as engineer in chief, and he supervised and directed all. The work of construction as it progressed was, on the estimate and certificate of Wagner, when approved by the construction committee, paid by the respective companies, pro rata as follows: Missouri Company, seven-twelfths; Phoenix, two-twelfths; defendant, three-twelfths. A short time after the formation of the construction committee, the St. Louis Company was absorbed by the Missouri Company, but

Mr. Guernsey continued on the committee and acted thereon in the interest of the Missouri Company. At the time the construction committee was formed Wagner was general superintendent and engineer of the Missouri Company and the Edison of St. Louis, receiving per month, $250 and $200, respectively, for his services, which salaries he continued to receive during joint construction of the underground conduit. He made no special charges against these companies for extra services as engineer in chief of joint construction. Wagner represented on the construction committee the Missouri Company, the Edison of St. Louis, and the Electric Light, Power and Conduit Company; the three latter companies were absorbed by the Missouri Company. Ross and Guernsey testified that Wagner was chosen as chief engineer for the reason that they thought he would not charge as much for his services as an engineer who had no connection with any of the companies, and that on several occasions at committee meetings Wagner stated he expected pay for his services as chief engineer of the work, and that they always understood he was to be paid. Matlack, on the contrary, says, that nothing was ever said about paying Wagner, until in the summer of 1897, when the Imperial Electric Company wanted to come in. The question was then discussed in reference to its just proportion of the expenses, should it be let in, but that prior to that time the committee had never agreed upon any sum to be paid to Wagner for engineering work, and that the matter had never been discussed or reported to the companies, and that at this same meeting he expressly stated that his company would not pay for such work, but would provide for its due proportion of the engineering work, and whenever the matter came up afterwards, he invariably ·said to Wagner, "We don't owe you anything and won't pay you anything," to which Wagner would reply, "I'll make you pay." The Phoenix Company paid Wagner $100 per month

for ten months' services as chief engineer of joint construction, without objection.  On February 18, 1898, Wagner made a written request on appellant for payment of his services at the rate of $100 per month. The appellant refused to pay the bill.  The construction continued and Wagner continued to act as chief engineer.  Some time in the latter part of May, 1898, he placed his claim in the hands of Mr. Jourdan, his attorney, for collection.  On June 4, 1898, in answer to a letter addressed to him by Mr. Jourdan, in regard to the account, Mr. Ryan, attorney for the defendant, stated to use his own language: 'The defendant does not consider itself liable to Mr. Wagner for any duties he had theretofore or might thereafter discharge as engineer of conduit construction.'  Wagner on the trial testified that he had rendered services as engineer on joint construction in November, 1898, and that he still considered himself in defendant's employ as engineer of joint construction, and that his total claim for services as such engineer rendered appellant, prior to and subsequent to the beginning of the suit, was $1,700.  It was admitted on the oral argument that $100 per month for plaintiff's services was a reasonable charge against defendant, if defendant is legally bound to pay for such services.  The suit was commenced on June 6, 1898. The petition is as follows:

" 'That on May 7, 1897, plaintiff was employed by defendant to render service to it as engineer in charge of and to supervise work in and the construction of its conduit system, and promised to pay the reasonable value of the service; that he rendered the services from May 7, 1897, to May 7, 1898; that they were reasonably worth twelve hundred dollars; that payment has been refused, and prays judgment.'

"The answer was a general denial.  The jury returned a verdict in favor of plaintiff for $1,200.  A motion for new trial proving of no avail, defendant appealed.

"The court gave on behalf of respondent the following instructions, to all of which appellant objected and excepted:

"'1. If the jury find that defendant through its secretary, Mr. Matlack, requested the plaintiff to perform the services in issue, and that plaintiff performed said services, then the verdict will be for plaintiff.

"'2. If the defendant's officers saw and knew that plaintiff was rendering the services in issue and that plaintiff expected pay therefor, then the verdict will be for plaintiff.

"'3. Even though you find no employment or request to perform said service by defendant, yet if plaintiff rendered said services and the defendant accepted the results of his labor then the verdict should be for the plaintiff.

"'4. The defendant is a corporation and hence can act only through its duly elected and acting officers, hence any act of Mr. Matlack, the secretary, or Mr. Scott, the president, with reference to the employment of plaintiff, if you find there was such employment; or, with reference to permitting plaintiff to do the work expecting payment thereof; or, the acceptance of the results of the labor of plaintiff, if labor you find he performed, was the act of and bound the defendant.'

"Appellant, at the close of plaintiff's case, demurred to the evidence, which was overruled; to this ruling it duly objected and excepted at the time. There are a number of exceptions to the admission and rejection of testimony saved by appellant during the progress of the trial. An examination of these fails to disclose any material error in the rulings of the court on questions of evidence, and we will pass them over without further notice.

"The clause of the contract providing for the construction committee reads as follows: 'To prevent all disputes, it is agreed by and between the parties to this contract, that a construction committee composed of

representatives, one to be selected by each of the companies, shall decide all questions which may arise relative to the execution of the contract on the part of the contractors, and its decisions shall be final and conclusive.' All through the contract the engineer of the contracting companies is mentioned; it is provided that the work of construction shall be done under his supervision, and must be accepted by him; he is authorized to supervise construction; to inspect and test material to be used in construction; he is required to locate and designate manholes, and all disputes between the contractor and the engineer are referred to the construction committee for final decision. In short, the supervision and execution of the contract on their part are delegated by the contracting companies to the committee and the engineer. The personnel of the engineer is not named in the contract, nor did the contracting companies after its execution at any time undertake to appoint one, but acquiesced in the appointment of Wagner by the committee. It may, therefore, be said, that even if the power to appoint an engineer was not expressly or impliedly conferred on the committee, yet its appointment of him was ratified and approved by all the companies, as shown by the notice of his appointment served on the Board of Public Improvements, May 11, 1897. The construction committee was the agent of all the companies—not each member thereof the agent of the company selecting him as a committeeman—and the powers given the committee under the contract were such as to authorize the appointment of an engineer, or to do anything that might be done by the contracting parties acting jointly, necessary to be done to secure the construction of the conduit according to the terms and requirements of the contract. Wagner's employment, therefore, by the defendant is not an open question, in view of all the evidence in the record. It is admitted that his services to the defendant were worth $100 per month, but the contention of appellant

is that he should not be paid for his services, because, first, it was not expressly agreed when he was employed that he should receive compensation; and, second, because all the companies furnished other engineers, inspectors, clerks and messengers from their general force of employees for whose services no extra charges were made or compensations claimed; and, third, because Wagner, at the time he was performing services for all the companies, was receiving salaries as the superintendent and engineer of two of the companies, against whom he made no extra charges for his special work as chief engineer of construction. The evidence of Wagner's intention to charge for his service when appointed is somewhat conflicting, but this question was squarely submitted to the jury by the third instruction given on the part of appellant, and the jury found against the appellant on this issue of fact. There is evidence tending to support that finding, hence the question is not open for discussion by us on appeal. That Wagner was receiving salary from other companies, against which he made no extra charge, is no reason why appellant should receive the benefits of his skill and labor for nothing; nor does the fact that employees of the several companies performed services under Wagner as chief engineer, for which no extra charges were made, stand in the way of Wagner's recovery for his services. That he was employed, that he earned what he had sued for, and that the appellant justly owes him, it seems to us, in view of all the evidence and the verdict rendered by the jury, are questions about which there is no longer reason for controversy. Some of the instructions given are not hypothecated on the evidence, and required the jury to find some facts not necessary to be found to entitle respondent to recover, and were therefore erroneous, but not prejudicial to appellant. The material question in the case was the right and purpose of Wagner to charge for his services. This was properly submitted by instructions given for appellant,

and we find no reversible error in the giving of instructions.

"Appellant contends that the suit was prematurely brought. Wagner was employed by the committee for joint construction; his employment necessarily covered the entire construction, which was not completed until some time after the suit was brought; his services were, therefore, not at an end when he commenced his suit, unless the letter of appellant's attorney of June 4th terminated his employment in so far as the appellant was a party thereto. The peculiar relation of these several companies to each other makes this question a difficult one. They were not partners, but joint contractors, with a several but not joint liability for expense and charges for the construction of the conduit under the joint contract. Appellant could not withdraw from the joint undertaking, nor revoke the agency (the construction committee) which it had agreed to create, and had helped to raise. It might have withdrawn its appointee on this committee and persuaded the other companies to do the same thing and make new appointments, but it could not destroy the committee, nor revoke any of its delegated powers, nor could it repudiate its actions, when within the scope of its authority. It might have persuaded the committee to discharge Wagner, but it could not force it to do so, nor could it discharge him from the employment he had received from the committee, nor, under the circumstances, refuse to accept the benefit of his services. The position of appellant was somewhat anomalous, but it put itself in that position by its own contract, and we hold that the letter of June 4th did not discharge Wagner, and that he continued the servant and employee of appellant until the completion of the work of construction. The time for which Wagner was employed was not designated in the motion appointing him, but the circumstances of the appointment, the understanding of the members of the committee, and his own understand-

ing, was, that it was for the whole period of construction. There was no agreement to pay in installments, or to pay at any particular time, or to pay a stipulated sum. The contract being for the entire construction, and no agreement as to time or amount of payment—was anything due when the suit was brought? In other words, is the contract apportionable? If not, then the suit was prematurely brought. [Hill v. Rich Hill Mining Co., 119 Mo. 9; Bersch v. Sander, 37 Mo. 104; Alkire Grocer Company v. Tagart, 60 Mo. App. 389.] A deep-rooted principle of the common law is, that, where parties have entered into a contract by which the amount to be performed by one and the consideration to be paid to the other are made certain and fixed, the contract can not be apportioned. But where the services to be performed are specified and fixed, but the consideration to be paid is left to be implied by law, the contract may be apportionable, provided the nature of the contract is such that the accrual of the benefits go along and keep pace with performance and are not dependent upon a completion of the contract in its entirety. [Note to Cutter v. Powell, 2 Smith's Leading Cas. (9 Ed.), 1228; Sickels v. Pattison, 14 Wend. 257; Wade v. Haycock, 25 Pa. St. 382.] Where benefits accrue, as they did in this case, as the work progressed, it may be well presumed that the parties contemplated remuneration should be paid from time to time during the progress of construction; especially may we indulge this presumption here, in view of the fact that the contract provided for monthly payments to the contractor of estimates to be made by Wagner and approved by the committee. In indulging this presumption we hold that the contract is apportionable and that the suit was not prematurely brought.

"Should the judgment be reversed on account of the error in instructions given for respondent? In view of all the evidence, we think not. The sole question of fact about which there was any controversy at

the trial, was, whether or not Wagner intended to charge for his services, when he was appointed chief engineer of construction by the committee. As hereinbefore stated, that issue of fact was properly submitted to the jury by appellant's third instruction, which reads as follows: 'The court instructs the jury that if they believe from all the facts and circumstances in evidence that the plaintiff when he was appointed by the construction committee engineer for joint construction, did not intend to charge for his services, he could not thereafter change his mind and charge therefor, even though you believe that the services were beneficial to defendant.' None of the instructions given for the respondent contradict or are opposed to this instruction. The jury were, therefore, bound to find that Wagner intended to charge appellant for his services at the very time of his appointment, before they were authorized under the evidence and instructions of the court to return a verdict in his favor. The evidence on all the other issues of fact to entitle him to recover was practically all on the side of Wagner, and there is no controversy as to them. On this showing from the whole record it is our duty to affirm the judgment, notwithstanding the giving of erroneous instructions, which in our opinion did not materially affect the merits or prejudice the appellant. [R. S. 1899, sec. 2303; Jones v. Poundstone, 102 Mo. 240; Homuth v. Railroad, 129 Mo. 629; Sullivan v. Railroad, 133 Mo. 1; Whitehead v. Atchison, 136 Mo. 485; Scotland County v. O'Connel, 23 Mo. App. 165; Newberger v. Friede, 23 Mo. App. 631; Noble v. Blount, 77 Mo. 235; Browne v. Ins. Co., 68 Mo. 133; Rowell v. St. Louis, 50 Mo. 92; Barr v. Armstrong, 56 Mo. 577; Nelson v. Foster, 66 Mo. 381; Gerren v. Railroad, 60 Mo. 405.]

"The judgment, with the concurrence of Judge Bond, is affirmed. Judge Briggs dissents, and is of the opinion that the second instruction given for the respondent is in conflict with Kinner v. Tschirpe, 54 Mo.

App. 575; and that the third one is in conflict with the following cases: Allen v. College, 41 Mo. 302; Whaley v. Peak, 49 Mo. 80; Painter v. Ritchey, 43 Mo. App. 111; Carter v. Phillips, 49 Mo. App. 319; Hiemenz v. Georger, 51 Mo. App. 586; and Hartnett v. Christopher, 61 Mo. App. 64; and that the error was prejudicial to the appellant, and that the judgment should be reversed and the cause remanded, and requests that the cause be certified to the Supreme Court for final determination. It is so ordered.''

In this court counsel for defendant present their side of the case anew, and in an elaborate brief, supplemented by oral argument, contend that the judgment of the circuit court should be reversed for error. The errors assigned being the refusal of the court to sustain defendant's demurrer to the evidence, and errors in the instructions given for the plaintiff in submitting the case to the jury.

They contend that the demurrer to the evidence ought to have been sustained because, on the undisputed facts and circumstances of the case, the law will not imply a promise on the part of the defendant to pay plaintiff for the services rendered; and if it would, the action is premature.

(1) In support of the first proposition, it is suggested that the relation which the plaintiff, as a member of the joint construction committee, sustained to the defendant, prevents such an implication, and in support of this suggestion the case of Bennett v. Car Co.; 19 Mo. App. 349, in which it was held that a contract between a corporation and a director thereof fixing his salary embodied in a resolution for the passage of which the director's vote was necessary was invalid, and Remmers v. Seky, 70 Mo. App. 364, in which it was held that in the absence of any express agreement the officers of a corporation will be presumed to serve, without compensation, are cited. As to these cases, and many others that might have been cited along the same

lines, it is only necessary to say that this suit is not on an express contract, but on *quantum meruit;* and that the services rendered were not within the line of the plaintiff's duties as a member of the joint committee. A case more analogous to the case in hand than these cases, is the recent one of Taussig v. Railroad, 166 Mo. 28, in which it was held that a lawyer could recover on *quantum meruit* for professional services rendered a corporation of which he was secretary-treasurer and one of its directors, such services, being without the line of his official duties in any of these relations. In considering that case, the recent cases on the subject were carefully examined, many cited, some of the leading cases reviewed, and the rule to be deduced therefrom stated as follows: "The rule applicable to such a case, to be deduced from the modern and best-considered cases, is, we think, that a party, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside of the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character upon an implied promise to pay for such services, *when* they were rendered under such circumstances as to raise a fair presumption that the parties intended and understood they were to be paid for, or ought to have so intended and understood." [Fitzgerald Construction Co. v. Fitzgerald, 137 U. S. 98; Pew v. Gloucester Nat. Bank, 130 Mass. 391; Bassett v. Fairchild, 132 Cal. 637, 64 Pac. 1082; Nat. Loan & Inv. Co. v. Rockland Co., 94 Fed. 335; Brown v. Silver Mines, 17 Colo. 421; Greensboro Co. v. Strattan, 120 Ind. 296; Santa Clara Mining Assn. v. Meredith, 49 Md. 389; Rogers v. Railroad, 22 Minn. 25; Shackelford v. Railroad, 37 Miss. 202; Chandler v. Monmouth Bank, 1 Green (N. J.) 255; Cheeney v. Railroad, 68 Ill. 570; Citizens' Nat. Bank v. Elliott, 55 Iowa 104.]

The principle of the cases cited may be sufficiently

illustrated by a quotation from one of them, used in the Taussig case. In Fitzgerald Construction Company v. Fitzgerald, 137 U. S. 1. c. 111 and 112, Chief Justice FULLER, speaking for the court, says: "The evidence tended to establish that Fitzgerald acted as treasurer for some months in 1886, and that while so acting he went to expense and trouble in the procuring of money for the company, and in the discharge of duties outside of those assigned to the treasurer as such, as defined in section 6 of the by-laws already quoted; and that as manager or superintendent he procured right of way, superintended the doing of the work, the hiring of the men, the sub-letting of the contracts, etc., which were matters not at all pertaining to his office as director. The character of all these services placed them outside of official duties proper. The general rule is well stated by Mr. Justice MORTON (since chief justice of Massachusetts) in Pew v. Gloucester Nat. Bank, 130 Mass. 391, 395: 'A bank or other corporation may be bound by an implied contract in the same manner as an individual may. But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. Thus, directors of banks and of many other corporations usually receive no compensation. In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the presumption that the parties intended and understood that they were to be paid for, or, at least, that the circumstances were such that a reasonable man in the same situation with the person who receives and is benefited by them, would and ought to understand

that compensation was to be paid for them.'   Tested by this rule, we think that the court fairly left it to the jury to determine whether Fitzgerald rendered services of such a character and under such circumstances that he was entitled to claim compensation therefor.   It could not properly be held as matter of law that he was not so entitled.''

While the case in hand is anomalous, and no parallel for it, perhaps, can be found in the books, yet, it is manifest, we think, that it comes within the principle of the rule laid down in the *Taussig case,* and that that, and the last case quoted from, furnish not only an answer to the suggestion that no promise to pay would arise by implication in this case, by reason of the relation which the plaintiff as a member of the joint committee sustained to the defendant, but furnish a rule for such implication, and as we are satisfied with the reasoning of Judge BLAND, which led to the conclusion that the action was not premature, we hold that the court did not err in overruling the defendant's demurrer to the evidence.

(2)   This brings us to the instructions with a rule by which to test them.

It is well settled law that ''if a person render a service without intending to charge for the same, and this is so understood by the other party, no recovery can be had for such service.''   [1 Beach on M. L. Contracts, 649.]   Or, as was said by ROMBAUER, P. J., speaking for the court in Kinner v. Tschirpe, 54 Mo. App. 575: ''In the absence of an express agreement, the contemporaneous intention of both parties that the services should be paid for must be implied to create an enforcible promise to that effect.''   But ''where there is no relationship between the parties and one accepts and retains the beneficial results of another's services, which he had no reason to suppose were gratuitous, and which he could or could not accept at his option, the law will imply a previous request for

the services and a promise to pay what they were reasonably worth." [1 Beach, M. L. Contracts, sec. 650.]

The vice running through all the instructions given for the plaintiff is that they ignore the relation between the parties, which harmonizes the rules last quoted, and brings the case within the rule laid down in the first paragraph of this opinion. Under the first instruction the jury were authorized to find for plaintiff, *non constat*, that he did not intend to charge for his services. Under the second they were authorized to find for the plaintiff, *non constat*, that the defendant understood they were not to be paid for, and under the third they were authorized to find for the plaintiff, *non constat*, that neither party intended or understood that the services were to be paid for. So, under these instructions read in connection with plaintiff's fourth explanatory instruction, the jury might well have returned a verdict for plaintiff for services rendered, which the defendant had no option to refuse, for which the defendant had never agreed to pay, for which the plaintiff may not have intended to charge, and for which the defendant may have understood no compensation was to be made. They are erroneous in themselves and inconsistent with the instructions given for the defendant which are as follows:

"1. The court instructs the jury that although they believe from the evidence that plaintiff may have intended to charge defendant for such services as he might render it, yet if the jury further believe from the evidence that he did not disclose said intention to defendant at the time of or before his selection by the committee as engineer, and the defendant did not understand that it was expected to pay him and did not intend to pay him for such services, and that it notified him promptly when it learned he meant to make a charge against it for such services, that it did not intend to pay him therefor, and if you believe from the evidence that

Vol 177 mo—5

it had not the power in the circumstances to discontinue his services as such engineer, then the court instructs the jury that the plaintiff is not entitled to recover.

"2. The court instructs the jury that the defendant could not against its consent be made a debtor to plaintiff, and if they believe from the evidence that defendant first learned that plaintiff meant to make a charge against it for services as engineer of joint construction after his appointment by the committee; and that it promptly notified him it would not pay for such services; and that plaintiff continued to act as engineer under said appointment and to render such services as his appointment required, to this defendant; and that defendant had no power to cancel said appointment and discontinue plaintiff's service as such engineer, then the court instructs the jury the plaintiff can not recover and the verdict must be for defendant.

"3. The court instructs the jury that if they believe from all the facts and circumstances in evidence that the plaintiff when he was appointed by the construction committee engineer for joint construction, did not intend to charge defendant for his services he could not thereafter change his mind and charge therefor, even though you believe that the services were beneficial to defendant."

That the plaintiff's instructions are erroneous is conceded in the opinion of Judge BLAND, but it is therein held that the judgment should not be reversed therefor, because under the third instruction for the defendant, the jury were required to find that plaintiff did intend to charge for this service, and this was the only disputed question of fact. In this view we can not concur. That the plaintiff intended to charge for his services constituted but a part of the issue which should have been submitted to the jury on the undisputed facts in the case. In order that the plaintiff recover in this case, it was necessary that the jury should have found not only that plaintiff intended, but that under all the

facts and circumstances, both he and the defendant understood or ought to have understood that compensation for his services was to be made, and the jury would have been warranted in so finding if they found that reasonable men in their places in the same circumstances, would have so understood. This is the issue which should have been clearly presented to the jury, and as it was not so presented in any or all of the instructions given, however read or construed, the judgment of the circuit court should be reversed and the cause remanded for new trial, and it is accordingly so ordered.

All concur, except *Robinson, C. J.*, and *Gantt, J.*, who dissent on the point of apportioning the contract.

SEPARATE OPINION.

GANTT, J.—I concur in the opinion of my learned brother BRACE in every respect, except wherein it holds that the plaintiff could apportion his contract and sue for the same as for monthly payments up to the time of the commencement of this action. As I read the record, if there was any undertaking by defendant to compensate plaintiff *pro rata* for the services rendered, it was for his services in formulating and superintending the *entire* construction of the joint conduit, and as the undertaking was entire, the compensation, in the absence of a specific contract to pay in installments, or monthly, must also be one sum for the whole, and necessarily no action would lie until the work was completed, and in my opinion there can be no apportionment of the services on the showing made. [Hill v. Rich Hill Mining Co., 119 Mo. 9; Sinclair v. Bowles, 9 B. & C. 92; Cox v. Railroad, 44 Cal. 18; Quigley v. DeHaas, 82 Pa. St. 267; Barker v. Reagan, 4 Heisk. (Tenn.) 590.]

I am unable to find any evidence of an agreement to pay plaintiff by the month, and considering the char-

acter of the services rendered, it seems to me entirely illogical to apportion professional services, such as plaintiff rendered, by the month. If apportionable at all they should be in proportion to the services rendered with reference to the whole work to be performed. Assuming the predicate upon which Judge BRACE's opinion rests, to-wit, that, "Wagner's employment was for the *whole period* of construction; that there was no agreement to pay in installments or to pay at any particular time, or to pay any stipulated sum," and that Wagner so understood it is strongly fortified by the fact that he never rendered any monthly bill to defendant, and that he says he made an entire charge of $1,700 for the *entire* amount of work, the contract is not severable.

In a word, we have, if anything, an indivisible implied contract of employment for the *entire* work, and there being no agreement to pay in installments, plaintiff can not split up his cause of action, and subject defendant to as many suits as he may elect, and entail the costs of two, or a half dozen actions where one only existed.

As I interpret the decision, the plaintiff is not estopped from suing for the balance of the time not included in this suit.

This being so, this case is readily distinguishable from those cases in which the employer wrongfully terminates the employment in which the employee is permitted to sue on *quantum meruit* for services rendered up to the dismissal or may wait until the whole period of employment has expired and sue for damages for the breach of the contract. Having reached the conclusion that defendant did not and *could not* terminate the contract under the peculiar circumstances, it seems to me illogical to apply the rule which governs where the employee is discharged before his term of service is completed and hence, in my opinion, the action is premature.

[Cox v. Railroad, 44 Cal. 18; Krumb v. Campbell, 102 Cal. 370; Coburn v. City, 38 Conn. 290.]

I fully agree with Judge BRACE's views as to the instructions and that the judgment must be reversed for the errors in those given by the court, but I go farther and hold that the action having been brought before the completion of the work, it was premature, and hence I think it should be reversed altogether and a new action brought for compensation for the entire work. *Robinson, C. J.,* concurs in my views.